FELIX O'HANLON and Others, as Trustees of School District No. 2, in the Towns of Middletown and Southfield, Richmond County, New York, Plaintiffs, *v.* JAMES SCOTT, JOHN L. FEENY, MICHAEL CAHILL, JOHN SCOTT and JAMES SCOTT, JR., Defendants.

*Action upon a bond — barred by the entry of judgment against one of the sureties, even if all are sued.*

In an action brought by the trustees of a school district upon the official bond of one James Scott, Jr., the tax collector of the district, against him and his sureties to recover money collected and misappropriated by him, it appeared that Scott personally delivered the bond in suit to the plaintiffs after its execution by the sureties, and that, although named as one of the obligors in the bond, he did not sign it himself.

*Held,* that the bond was binding upon the sureties; that the execution of the bond by the collector would not have changed his relation to the trustees or to his sureties.

It further appeared that judgment by default was entered against James Scott, James Scott, Jr., and Michael Cahill, pursuant to an order of the Special Term, which order also granted leave to the plaintiffs to continue the action against the defendants Feeny and John Scott, who interposed answers to the plaintiffs' complaint. Subsequently the default against Cahill was vacated, and he was permitted to serve an answer, the order providing, however, that the judgment entered against him should stand as security.

John Scott, Feeny and Cahill served answers and each pleaded as a bar to the action the entry of the judgment against his co-surety, James Scott.

*Held,* that the entry of such judgment, so far as Cahill was concerned, was not a bar to a right of action against him, but that such judgment was a bar to the further prosecution of the bond against John Scott and Feeny:

That the security of the contract became absorbed and merged in the higher security of the judgment, the joint liability on the contract being thereby severed, and no further action could be founded on the original promise.

*Nat. Broadway Bank* v. *Hitch* (66 Hun, 401), followed.

Motion by the plaintiffs, Felix O'Hanlon and others, as trustees, etc., and by the defendant Michael Cahill for a new trial upon a case containing exceptions, ordered heard at the General Term in the first instance upon the verdict of a jury in favor of the plaintiffs, Felix O'Hanlon and others, as trustees, etc., against the defendant Michael Cahill and in favor of the defendants John Scott and John L. Feeny, rendered by direction of the court after a trial at the Richmond County Circuit on the 10th day of October, 1893.

The action was brought to recover upon a school tax collector's bond which was not produced upon the trial, it having disappeared from the town clerk's office.

*George P. Gordel,* for the plaintiffs.

*George J. Greenfield* and *W. Allaire Schortt,* for the defendants John Scott and Michael Cahill.

Brown, P. J.:

This action was brought by the plaintiffs as trustees of a school district upon an official bond of James Scott, Jr., the tax collector of said district, to recover money collected and misappropriated by him. The collector and two of his sureties failed to answer. Upon the trial of the issues raised by the answers of the three other sureties, the court directed a verdict in favor of the defendants John Scott and John L. Feeny, and in favor of the plaintiffs against the defendant Michael Cahill, for the sum of $3,645.10. The plaintiffs and the defendant Cahill moved for a new trial upon the exceptions, and the court ordered the motion to be heard in the first instance at the General Term.

Scott was elected collector on August 21, 1891, and on September seventeenth personally delivered the bond in suit to the plaintiffs after its execution by the sureties. Although named as one of the obligors in the bond, he did not sign it. The statute (2 R. S. [8th ed.] p. 1302, § 83) requires the collector to " execute a bond to the trustees * * * conditioned for the due and faithful execution of the duties of his office," and provides that the collector vacates his office by not executing a bond, and that the trustees may supply the vacancy.

It is the claim of the defendants that by reason of the failure of

the collector to sign the bond, they never became liable as sureties. The authorities cited to sustain this contention are all decisions from other States. Some of them like *Bean* v. *Parker* (17 Mass. 591), which was the case of a bail bond; *Wood* v. *Washburn* (2 Pick. 24), which was the case of an administrator's bond, and *Fletcher* v. *Austin* (11 Vt. 447), which was the case of a failure of a co-surety to sign, are plainly distinguished from the case before us. But the cases of *The City of Sacramento* v. *Dunlap* (14 Cal. 421), and *People* v. *Hartley* (21 id. 585), and *Bun* v. *Jetmore* (70 Mo. 228), fairly sustain the defendants' position.

We are not disposed, however, to follow the rule applied in these cases. The defense is the merest technicality possible, and is absolutely without any merit so far as it has relation to any of the rights of the parties. The statute (2 R. S. [8th ed.] p. 1304, § 90) provides that for the recovery of all balances in the hands of the collector, which he shall neglect or refuse to pay to his successor, "the trustees in their name of office shall have their remedy upon the official bond of the collector or any action and any remedy given by law." The defendants contend that as no other action or remedy by law is given to the trustees this provision restricts the remedies of the trustees against a defaulting collector to an action on his official bond. Such a construction, we think, is too narrow and technical to be given to the statute. It should be liberally construed, and we are of the opinion that it grants to the trustees the right to pursue every remedy or action that exists for the collection of debts. That they may sue the collector for money received, entirely independent of his official bond, and that proceedings by attachment, injunction and every other remedy which a creditor may have against his debtor is available to the trustees. Under such a construction as to the rights of the trustees, it is apparent that the execution of the bond by the collector would not have changed in the slightest degree his relation to the trustees or to his sureties. The trustees might sue him either on the bond or for money received and misappropriated, and the sureties' rights to recover against him for money they should be compelled to pay would be the same whether he signed the bond or not.

The case is entirely different from one where one, who had agreed to become a co-surety, failed to sign the bond, as in such a case those who did sign would be deprived of their right of contribution

against the one not signing. But no such result follows the failure of the collector to sign. His liability to the trustees is entirely outside of and independent of the bond, and, such being the fact, the case falls within the rule applied in *Parker* v. *Bradley* (2 Hill, 584); *Williams* v. *Marshall* (42 Barb. 524); *Chouteau* v. *Suydam* (21 N. Y. 179); *Mattoon* v. *Barnes* (112 Mass. 466); *Trustees* v. *Sheïk* (119 Ill. 579); *State* v. *Bowman* (10 Ohio, 445).

In all these cases it was held that the bond was binding upon the sureties although not signed by the principal. The requirement of the statute that the collector should execute the bond was not intended for the benefit of the sureties, but of the trustees, and as the instrument expresses upon its face that it was given as security for the performance of the collector's duties, it was apparent to the sureties that the signature of the collector was, as to them, of no importance whatever.

We are of the opinion, therefore, that the court properly ruled that the bond was binding upon the defendants.

It further appears that on November 26, 1892, judgment for want of answer was entered against James Scott, James Scott, Jr., and Michael Cahill, pursuant to an order of the Special Term, which order also granted leave to the plaintiffs to continue the action against the defendants Feeny and John Scott. Subsequently the default against Cahill was vacated, and he was permitted to serve an answer, the order providing, however, that the judgment entered on November twenty-sixth should stand as security. Scott, Feeny and Cahill served answers, each pleading as a bar to the action the entry of the judgment against his co-surety. This defense was sustained as to John Scott and Feeny, but overruled as to Cahill. So far as Cahill is concerned the ruling of the court is sustained by the case of *Heckemann* v. *Young* (134 N. Y. 170) which, in its facts, was very similar to the case against this defendant.

We are of the opinion that the ruling of the trial court, that the entry of the judgment against the defaulting defendants was a bar to the further prosecution of the bond against Scott and Feeney, was also correct. The plaintiffs do not dispute the rule that a judgment rendered against one of several joint debtors in an action against him alone is a bar to an action against the others. But the argument, as I understand it, is that this principle is not applicable to a

case where the judgment pleaded as a bar was rendered against one joint debtor in an action brought against all the debtors. This precise question was decided adversely to the plaintiffs' contention by the General Term of the first department in *National Broadway Bank* v. *Hitch* (66 Hun, 401).

We have carefully considered the criticism of the learned counsel for the plaintiffs upon that case, but do not feel at liberty to disregard it as an authority directly in point upon the question before us. The counsel's argument, that the action having been commenced against all the joint debtors, and judgment having been entered against those who failed to answer, pursuant to an order of the court which permitted the plaintiffs to continue the action against the other debtors, the intent of the plaintiffs was thereby manifested not to release the answering defendants or to abandon the claim against them, is not without force. But it fails to overcome, in my judgment, one of the grounds upon which the rule applied by the trial court is founded, and that is that the security of the contract became absorbed and merged in the higher security of the judgment. The joint liability on the contract is thereby severed and no further action can be founded on the original promise.

Such appears to be the doctrine asserted in all the cases in which this principle has been applied. (*Olmstead* v. *Webster*, 8 N. Y. 413 ; *Peters* v. *Sanford*, 1 Den. 224; *Pierce* v. *Kearney*, 5 Hill, 82; *Suydam* v. *Barber*, 18 N. Y. 468.)

Although in all the cases I have examined the judgment pleaded as a bar was entered in a separate action against one joint debtor, the grounds of the decision have been asserted to rest on the fact that the joint contract sued on had been merged in the prior judgment and no further action could thereby be maintained upon it.

The rule is an extremely technical one and in my judgment ought to be abolished. But the change must come from the Legislature. If it can be modified in conformity with the appellants' contention, such result must come from the Court of Appeals.

We must adhere to it, and in sustaining the ruling of the trial court we give effect to what we deem to be the logical result of its application to the facts of this case.

We have examined the other questions raised by the exceptions and argued by the defendants and are of the opinion that none of

them are well taken. The amount of the recovery is supported by the evidence, and there was no request made by the defendants to have that question submitted to the jury.

The motion must be denied, and judgment entered in accordance with the directions of the trial court, with costs to the plaintiffs against the defendant Cahill, and costs to the defendant Scott against the plaintiffs.

DYKMAN and PRATT, JJ., concurred.

Motion for new trial denied and judgment ordered in accordance with the direction of trial court, with costs to plaintiffs against defendant Cahill, and costs to defendant Scott against the plaintiffs.