WILLIAM MATTOON *vs.* JOHN S. BARNES & another,

A., B. and C. had been partners; D. had an unsettled claim against the partnership; A. had a private claim against D.; C. authorized A. and B. to settle D.'s claim, and gave A. a writing, signed by him, to that effect; A. and B. agreed that A. should settle the claim and be paid therefor $1000 by B. and C.; a written agreement to that effect was signed by A. and B. but not by C.; A. and B. intending by their sole signatures to make a binding contract. In an action by A., who had settled the claim, against B. and C. to recover the $1000, C. not contesting his liability, *Held*, that B. was bound by the contract.

CONTRACT against the executors of James Barnes and against Willis Phelps to recover the sum of $1000 upon the following written agreement:

" Whereas William Mattoon has agreed to make a settlement of all claims of the estate of Harrison Messer, late of Shelby County, Illinois, against the late firm of Phelps, Mattoon & Barnes, composed of the said Mattoon and Willis Phelps and James Barnes, now therefore, we the said Barnes and Phelps, in consideration of the said agreement of said Mattoon, hereby agree with the said Mattoon, that if he effects a settlement of said claims the said Mattoon shall be paid out of the assets of Phelps, Mattoon & Barnes the sum of fifteen hundred dollars in payment of his services and expenses and payments in that behalf, or

failing assets of Phelps, Mattoon & Barnes for the purpose, we agree to pay said Mattoon out of our own moneys the sum of one thousand dollars, being one two thirds part of said fifteen hundred dollars. Dated at Springfield, Massachusetts, Nov. 25, 1867. James Barnes. William Mattoon."

The defendant Phelps did not contest the suit, but the defence was conducted in behalf of the representatives of James Barnes alone.

At the trial in the Superior Court, before *Bacon*, J., the plaintiff offered evidence tending to prove his case in all other respects than those hereafter mentioned. There was evidence that previous to the making of the agreement for the non-fulfilment of which the action was brought, the plaintiff, James Barnes, and Willis Phelps, were partners, but at that time the partnership had been dissolved and its affairs partially settled; that the estate of one Harrison Messer had a claim of a large amount against the firm; that the plaintiff at the same time had a private claim against the estate of Messer.

The plaintiff offered to show that he and Barnes and Phelps had talked about the plaintiff's settling for the firm the claim of Messer's estate; that before they had come to an agreement about it Phelps was obliged to go to the West; that before going he authorized Barnes and the plaintiff to make for him and in his behalf and for themselves any arrangement of the matter they should think best; that accordingly the plaintiff and Barnes made the above agreement and signed it for themselves and in behalf of Phelps as and for a binding contract between the parties; that before going away Phelps wrote and gave him the following paper, which he offered to show related to the matter of his settlement for the firm with the estate of Messer: "Springfield, November 18. Wm, Mattoon, — My dear Sir: I did not get back from New York as soon as I expected, and have to go West this morning. Any arrangement you and Gen. Barnes make about the matter we were talking about will be satisfactory to me. Respectfully yours, W. Phelps." He further offered to show that in pursuance of the authority given by this paper, Barnes and he agreed that he should settle the claim

of the estate of Messer against the firm, and that he should be paid $1500 out of the assets of the firm for his services and ex penses and payments in behalf of the firm, and that if the firm should fail to have assets sufficient for that purpose, Barnes and Phelps should pay him for making the settlement $1000 of their own money ; and that then Barnes and he made and executed the paper above set forth, and that he had ever since retained both papers, and he produced them in court together as evidence of a binding contract between the parties.

The court excluded the evidence on the ground that the plaintiff by parol could not control or vary the terms of the agreement, and ruled that it was not binding upon Barnes or his representatives because it did not purport to be signed by Phelps, and that it could not be shown to have been executed by Phelps, by parol evidence, and directed a verdict for the defendant.

The plaintiff excepted.

*M. P. Knowlton*, ( *G. M. Stearns* with him,) for the plaintiff.

*A. L. Soule*, ( *E. H. Lathrop* with him,) for the representatives of James Barnes.

MORTON, J. In considering this case we must assume that all the facts which the plaintiff offered to prove are true. It appears that the plaintiff and James Barnes and Willis Phelps had been partners. After the partnership was dissolved and its affairs partially adjusted, the estate of Messer had an unsettled claim against the firm, and the plaintiff had a private claim against the estate of Messer. The three partners had some conversation about the settlement of this claim, but before any agreement on the subject was made Phelps was obliged to go West, and before going he orally authorized Barnes and the plaintiff to make for him and in his behalf, and for themselves any arrangement they should think best regarding the matter. Before leaving, Phelps signed a letter to the plaintiff in which he says, " Any arrangement you and Gen. Barnes make about the matter we were talking about will be satisfactory to me."

Soon after Phelps left, Barnes and the plaintiff agreed that the plaintiff should settle the Messer claim, that he should be paid therefor out of the assets of the firm $1500, and that, if the

assets should be insufficient for that purpose, the said Barnes and Phelps should pay the plaintiff $1000 out of their own moneys, and thereupon executed the paper dated November 25, 1867. This agreement was signed by Barnes and Mattoon, but was never signed by Phelps, and the executors of Barnes now contend that it cannot be enforced against his estate because it was not signed by Phelps.

The plaintiff has performed his part of the agreement, his claim is just and equitable, the objection to it is purely technical, and ought not to prevail unless we find in the established rules of law insuperable difficulties in the way of the plaintiff's right to recover. In our opinion there are no such difficulties.

The case does not turn upon the question whether Phelps is bound by the written agreement signed by Barnes and Mattoon. He does not contest the suit, but admits that by his contract with the plaintiff he is liable according to the terms set out in the agreement. If it be assumed that Phelps is not bound by the agreement itself, the question is whether that fact discharges and releases Barnes from his promises contained therein.

There is a class of cases in which it has been held that where an instrument has been executed only by a part of the parties between whom it purports to be made, it is not binding upon those who have executed it. *Bean* v. *Parker*, 17 Mass. 591. *Wood* v. *Washburn*, 2 Pick. 24. *Howe* v. *Peabody*, 2 Gray, 556. *Russell* v. *Annable*, 109 Mass. 72. Most, if not all, of the cases of this class, are cases where the parties executing the instrument would have a remedy, by way of indemnity or contribution, against the other parties named, which remedy is lost by the failure of such other parties to execute the instrument. The reasons for holding the instrument void are that it was intended that all the parties should execute it, that each executes it upon the implied condition that it is to be executed by the others, and therefore that until executed by all it is inchoate and incomplete, and never takes effect as a valid contract.

On the other hand, where these reasons do not apply, it is held that a party who signs and delivers an instrument is bound by the obligations he therein assumes, although it is not executed by

all the parties named in it. *Cutter* v. *Whittemore,* 10 Mass. 442. *Adams* v. *Bean,* 12 Mass. 137. *Warring* v. *Williams,* 8 Pick. 322. *Herrick* v. *Johnson,* 11 Met. 26. *Yale* v. *Wheelock,* 109 Mass. 502. In the case at bar, the estate of Barnes does not lose any right or remedy against Phelps by reason of the fact that he did not sign the agreement. He admits that he is jointly liable for the amount named in it, and the estate of Barnes has the same remedy for a contribution against him as if he had signed the agreement in form. Upon this point the case of *Herrick* v. *Johnson* goes farther than the case at bar.

In the case at bar, it also appears that Barnes executed and delivered the agreement with a full knowledge of all the facts. Both parties knew that Phelps was absent; there was no condition, express or implied, that Phelps was to sign it; neither party intended or understood that it should be deemed inchoate or incomplete; but Barnes delivered it in its present form " as and for a binding contract between the parties." We are of opinion that, under the circumstances of this case, Barnes was bound by his execution and delivery of this contract, and that the learned judge who presided at the trial erred in directing a verdict for the defendant. *Exceptions sustained.*