MARGARET M. MUEHLBACH et al., Respondents, v. THE MISSOURI AND KANSAS INTERUR-BAN RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 19, 1912.

1. CONTRACTS: Execution of: Intention of Parties. A party, who signs and delivers an instrument, is bound by the obligations he therein assumes, although it is not signed by all the parties named in it, unless it appears that the parties signing mutually intended that it should be inchoate and incomplete and not to take effect as a contract, until signed by all the parties named.

2. ————: Breach: Penalty. Where a contract contains provisions for a progressively increasing scale of monthly payments intended to coerce a speedy vacation of a tract of ground and to impose an interminable and ever increasing punishment for a breach of the contract, a punishment so harsh and oppressive, so disproportionate to the subject-matter as to preclude the thought that the parties had in mind the liquidation of reasonable damages in consequence of a breach, such provisions constitute a penalty and are non-enforcible.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas*, Judge.

REVERSED AND REMANDED.

166 Mo. App.—20

*Bowersock, Hook & Hall* for appellant.

The instrument on which the suit is based never became a contract binding on the defendant, for the reason that it was never signed by both parties of the second part or delivered as a contract. Brown v. Rice, 29 Mo. 322; Gann v. Railroad, 65 Mo. App. 670; Green v. Cole, 103 Mo. 70; McCauley v. Schatzley, 88 N. E. Rep. (Ind.) 972; Barber v. Burrows, 51 Cal. 404; 51 Cal. 473; Fish v. Johnson, 16 La. Ann. 29; Wilcox v. Saunders, 4 Neb. 569; Crittenden v. Armour, 45 N. W. Rep. (Iowa); 888; McDaniel v. Anderson, 19 S. C. 211; Arnold v. Scharbauer, 116 Fed. Rep. 492; National Bank v. Hall, 101 U. S. 43; Gay v. Murphy, 134 Mo. 98; Page on Contracts, secs. 577-579; 9 Cyc. 302. The monthly payments provided for in said instrument were a penalty. Menger v. Piano Co., 96 Mo. App. 283; Railroad v. Stone, Co., 90 Mo. App. 171; Tinkhorn v. Satori, 44 Mo. App. 659. Evidence of the rental value of the land was admissible to show that such payments were so intended. It is improper to enter two final judgments in a case. R. S. 1909, secs. 2090, 2097; Russell v. Railroad, 154 Mo. 428; Cramer v. Barmon, 193 Mo. 327; Boothe v. Loy, 83 Mo. App. 601; Mann v. Doerr, 222 Mo. 1; Beshears v. Banking Assn., 73 Mo. App. 293. The case should have been disposed of as a suit in equity and not at law.

*Seebree, Conrad & Wendorff* for respondents.

(1) The instrument on which this suit is based is binding on the defendant. (a) Strang was a nominal party. Hall v. Hall, 107 Mo. 110; Hillman v. Allen, 145 Mo. 638; Condit v. Maxwell, 142 Mo. 266; Crawley v. Crafton, 193 Mo. 421; Brandon v. Carter, 119 Mo. 573. (b) The contract became binding on the appellant because it was signed by the Muehlebachs and the appellant, delivered and acted on by them. State v. Moore, 46 Mo. 377; Mfg. Co. v. Repass,

75 Mo. App. 420; Gay v. Murphy, 134 Mo. 98; Mattoon v. Barnes, 112 Mass. 463; Dillon v. Anderson, 43 N. Y. 231; Naylor v. Stene, 104 N. W. 685; Edwards v. Gildemeister, 61 Kan. 141; Dairy Co. v. Dairy Co., 70 S. W. 390; Pub. Co. v. Walker, 87 Mo. App. 503. (2) If the contract is valid upon the parties having signed it, is the defendant entitled to any relief on the ground that the rent therein provided for is a penalty? Page on Contracts, sec. 1167; 30 Cyc. 1135; State ex rel. v. Walbridge, 119 Mo. 383; Walker v. Engler, 30 Mo. 130; Hoster v. Lange, 80 Mo. App. 238; Pinson v. Campbell, 124 Mo. App. 263; Jones v. Anderson, 82 Ala. 302; Commissioners v. South Bend, 118 Ind. 68; Dewey v. School District, 43 Mich. 480; Trustees v. Bennett, 27 N. J. L. 513; Stonam v. Waldo, 17 Mo. 489; Brayan v. Spurgin, 5 Snead (Tenn.) 681; Jennings v. Lyons, 39 Wis. 553; Roseberry v. Association, 142 Mo. App. 552. (3) The court did not err in entering two final judgments. Mills v. Paul, 30 S. W. 242. (4) The court did not treat the trial of these cases as a suit at law.

JOHNSON, J.—This suit, commenced in the circuit court of Jackson county, November 27, 1909, is for the recovery of the agreed compensation plaintiffs claim defendant was to pay them for the use of their land for a right of way of a railroad owned and operated by defendant. On December 7, 1909, plaintiffs instituted another suit against defendant in the same court on a promissory note of $1460 dated January 9, 1908, due eighteen months after date and bearing interest at six per cent per annum from January 1, 1909. It appears from the petition in both cases as well as from the answers filed by defendant that both actions grew out of and depend upon the validity of a certain contract the parties entered into January 9, 1908. Defendant claims this contract is void and prays for the cancellation of both note and contract.

On motion of defendant the two actions were consolidated and tried together in the circuit court without a jury. After hearing the evidence the court rendered judgment for plaintiffs in each case in accordance with the prayers of the respective petitions and defendant appealed from each judgment. This opinion deals with the first mentioned action which for convenience we shall call the action for rent, but as the two cases are so closely related what we shall say will dispose of the questions at issue in the suit on the note.

Defendant is a Kansas corporation operating an electric railroad in that state from a point on the line between Missouri and Kansas known as Thirty-ninth street and State Line to Olathe, Kansas. This point at the times of the events in controversy was the western terminus of the "Roanoke line" of the street railway system of Kansas City operated by the Metropolitan Street Railway Company. Defendant has a traffic agreement with the Metropolitan Company that enables it to operate its cars over the tracks of that company to the central portion of Kansas City. Defendant's road was constructed in 1905, and beginning at its junction with the road of the Metropolitan Company at Thirty-ninth street and State Line took a southwesterly course over a tract of land owned by George Muehlebach which contains about twenty-eight acres, is in Kansas immediately west of the State line, and lies between a prolongation of Thirty-ninth street on the north and Forty-first street on the south. We shall refer to this land hereafter as "tract A." Crossing Forty-first street the road continues on a tangent over a smaller tract owned by Muehlebach which we shall call "tract B." Muehlebach died December 22, 1905, and plaintiffs, with the exception of William Buchholz are his heirs and as such are the owners of the land described. All are of legal age except Carl who is a minor and plaintiff Margaret M. Muehlebach

who is his guardian and curator.    In 1905, defendant
brought a condemnation suit in the District Court of
Wyandotte county, Kansas, the object of which was to
secure a right of way over "tract A" and at the same
time brought two other suits for the right of way over
"tract B."    Commissioners were appointed who ap-
praised the damages in the first suit at $2540 and in the
others at $742.    Defendant paid these assessments to
the clerk of the court and constructed the road over
both tracts doing grading, cutting and filling that dam-
aged the whole of both tracts.    Plaintiffs appealed
from these awards and these appeals were pending in
the district court until January 10, 1908, when they
were dismissed by plaintiffs under circumstances to
be recounted hereafter.

In 1907, the Metropolitan Street Railway Com-
pany contemplated extending its Roanoke line south
on Bell street to and beyond Forty-first street and
negotiations were begun between defendant and that
company for a junction between the two roads at
Forty-first and Bell streets in place of the connection
at Thirty-ninth street and State Line.    Bell street runs
north and south, is in Kansas City, Missouri, and is
the first street east of State Line.    Plaintiffs own the
land on both sides of Forty-first street in the blocks
between State Line and Bell, and it was the idea of
defendant to abandon the road over "tract A" and to
run west on Forty-first street from a new junction
at Bell street to a connection with its road over "tract
B."    Accordingly on April 19, 1907, W. B. Strang,
who was not an officer of defendant but was a heavy
stockholder, acting on behalf of defendant, addressed
a letter to plaintiffs in which, referring to a proposal
he had received from plaintiffs for a settlement of
the pending litigation, he offered a settlement, the
prominent features of which were that defendant
would abandon the right of way over "tract A" by

January 1, 1908, would continue to use the right of way over "tract B," would establish a terminal at Forty-first and Bell streets on the land of plaintiffs, for all of which it would allow plaintiffs the sum of $742, paid into court for their benefit in the condemnation suits affecting "tract B" and in addition would pay plaintiffs $4000 for the use of "tract A" to January 1, 1908, and for the land required for the new terminal.

This proposal was acceptable to plaintiffs but for some reason was not reduced to a formal contract. Shortly after January 1, 1908, the attorney of plaintiffs and Albert F. Hunt, defendant's president, resumed negotiations for a settlement which resulted in the execution of the contract now in dispute. This contract which stated on its face that the contracting parties were plaintiffs, spoken of as parties of the first part, and defendant and W. B. Strang, parties of the second part was signed by plaintiffs and defendant but not by Strang who, at the time, was in New York. After the contract was signed it was forwarded by Hunt to Strang for his signature. He refused to sign but plaintiffs were not advised of his refusal until about March 1st when Hunt informed them that Strang had rejected the contract and that he did not consider defendant was bound by it. Hunt admits that, as president, he had authority to execute the contract on behalf of defendant but based his repudiation of the contract on the ground that the refusal of one of the parties to sign absolved the others.

The material provisions of the contract thus may be stated: Plaintiffs were to dismiss their appeals in the condemnation suits, give the right of way over "tract B," give defendant the use of land for the new terminal at Forty-first and Bell streets and pay most of the costs of the condemnation suits. Defendant was to remove the road from "tract A" and level off the cuts and fills on that tract, was to allow plaintiffs to

receive the deposit of $742 on account of the right of way on "tract B," was to execute a quitclaim deed to plaintiff covering the right of way on "tract A" and was to pay plaintiffs in addition the sum of $4000, as follows: Defendant was to obtain and pay over to plaintiffs the deposit of $2540 made in court on account of "tract A" and execute and deliver the promissory note in suit for $1460. No obligation or duty of any kind was imposed on Strang nor was any benefit to be derived by him from the contract. He was made a party for the reason that defendant being a Kansas corporation could not transact business on the Missouri side of the line and it was contemplated that the business relating to the new terminal would be conducted in his name.

Immediately after the contract was signed by plaintiffs and defendant both parties treated it as a complete and binding contract. Plaintiffs' attorney and defendant's president went together to Kansas City, Kansas, and obtained the two deposits. The one of $2540 was received by Hunt and paid at once to plaintiffs' attorney as a payment on defendant's obligation of $4000. Each paid his part of the costs of the condemnation suits and plaintiffs' attorney dismissed their appeals "with prejudice." On behalf of defendant Hunt executed and delivered a quitclaim deed to the right of way on "tract A" and plaintiffs' attorney filed the deed for record. Apparently it was contemplated by both parties that the new terminal and connection with the Metropolitan road would be made in the immediate future but in addition to the other benefits to plaintiffs we have enumerated, the contract contained provisions designed to accelerate the removal of defendant's road from "tract A." The substance of these provisions was that beginning January 1, 1908, defendant should pay a rental of fifty dollars per month to plaintiffs for the right of way on that tract until the removal of the road. If the road

was not removed by the end of the first six months, the rental for the next six months was to be seventy-five dollars per month; for the third six months $100 per month, for the fourth six months $125; for the fifth, $175; for the sixth, $225, and so on indefinitely, increasing the rental $50 per month for each additional period of six months.

At the time the present suit was brought the Roanoke line still ended at Thirty-ninth street and State Line and defendant, *ex necessitate,* still connected with that line at that place and operated its road over "tract A." The demand alleged in the petition is for the rent that accrued during the period beginning January 1, 1908, and ending December 1, 1910, amounting in all to $1975 for twenty-three months. At the present time the rental of the tract computed according to the progressively ascending scale of the contract is $375 per month and if we should uphold this provision of the contract, defendant now would be indebted to plaintiffs on account of rent from December 1, 1910, in the sum of $6075. And if defendant should remain five years longer, it would have to pay about $40,000 more for the use of a right of way the entire value of which for all time was assessed at $2540 in the condemnation suit. For the next ten years the rental would be over $160,000.

I.   It appears to be conceded that the right of plaintiffs to recover in the present suit and in the companion suit on the promissory note depends on the validity of the contract of January 9, 1908. In both suits plaintiffs found their actions on that contract and, accepting the position thus tendered, defendant assails the validity of the contract on two grounds, viz., first, that it "never became a contract binding on the defendant" and, second, that the provision for monthly payments for the use of the right of way over "tract A" was intended as a penalty to coerce per-

formance of the contract by defendant and not as an agreement for the payment of rental or of liquidated damages for a breach of the contract by defendant. We shall determine these questions in the order of their statement.

In support of the first proposition counsel for defendant argue that inasmuch as the contract on its face purported to include Carl Muehlebach among the parties of the first part and W. B. Strang as one of the parties of the second part, the instrument did not become effective as a contract and, therefore, did not bind the signatory parties for the reason that it was not signed by these two parties. Carl Muehlebach was a minor and, of course, his signature to the contract would have had no effect to bind him or his estate and the contract must be construed not as providing for the procurement of his signature, which would have been a vain and useless act, but as binding the first parties who were *sui juris* to procure a signature that would bind his interest and estate in the subject-matter of the contract. This burden was discharged by the first parties when they procured the duly authorized signature of his guardian and curator who signed the contract in his behalf with the approval of the probate court having jurisdiction over his estate.

Nor do we regard as sound the contention that the contract is void because of the refusal of Strang to sign it. The contract imposed no obligation on Strang and secured no benefit to him. Defendant was the only party of the second part that assumed any obligation or was to secure any advantage. We concede defendant would have had the right to require that the contract should not go in effect unless signed by Strang, though apparently he was but a nominal party but defendant did not take such position. On the contrary its president who had full authority to act in its behalf did not wait to procure the signa-

ture of Strang but, in conjunction with plaintiffs, proceeded at once to perform the contract and thereby secured benefits for defendant in a way to disclose the existence of a mutual intention that the contract should be considered as binding on the parties who had signed it. The rule applicable to such cases is that a party who signs and delivers an instrument is bound by the obligations he therein assumes although it is not signed by all the parties named in it unless it appears that the parties signing mutually intended that it should be inchoate and incomplete and not take effect as a contract until signed by all the parties named. [State ex rel. v. Sandusky, 46 Mo. 377; Donnell Mfg. Co. v. Repass, 75 Mo. App. 420; Gay v. Murphy, 134 Mo. 98; Mattoon v. Barnes, 112 Mass. 463; Dillon v. Anderson, 43 N. Y. 231; Grafeman Dairy Co. v. St. Louis Dairy Co., 96 Mo. App. 495; Naylor v. Stone, 104 N. W. (Minn.) 685; Edwards v. Gildemeister, 61 Kan. 141; American Pub. Co. v. Walker, 87 Mo. App. 503.] And the burden is on the party attacking the contract to show that when he signed it was agreed that the contract should not take effect until signed by all the parties. [Authorities, supra.]

It would be most unjust to suffer defendant to derive all of the benefits the contract conferred and then repudiate its obligations on the ground of a lack of mutuality as to parties. The contract bound the parties who signed it and the promissory note executed by defendant in pursuance of its provisions is a valid obligation which defendant must discharge.

II. The second proposition relates exclusively to the case in hand. Was the so-called rental agreement in legal intendment a penalty intended to coerce performance of the contract? If it was it cannot be enforced. [2 Page on Contracts, sec. 1167 *et seq.*] "A contract for a penalty" says this author, "is an agreement to pay a stipulated sum in case of default, in-

tended to coerce performance, to punish default, or to secure payment of the actual damages. A contract for liquidated damages is a contract by which the parties in advance of breach fix the amount of damages which will result therefrom and agree upon its payment." Whether the stipulated payments of so-called rent should be classed as a penalty or as liquidated damages for the non-performance of the agreement of defendant to vacate "tract A" is a question of law for the court to solve in the light of the subject-matter of the contract and the intention of the parties. [May v. Crawford, 150 Mo. l. c. 530.] In this case it is said: "If, from the nature of the agreement, it is clear that any attempt to get at the actual damage would be difficult, if not vain, the courts will incline to give the relief which the parties have agreed on. But, if, on the other hand, the contract is such that the strict construction of the phraseology would work absurdity or oppression, the use of the term liquidated damages will not prevent the courts from inquiring into the actual injury sustained, and doing justice between the parties. [1 Sedg. on Dam. (8 Ed.), sec. 396.] Where the subject-matter of the contract is such that the damages for its breach can be computed with certainty by definite rules, the courts will usually treat the sum agreed upon as a penalty; especially if there is great disparity between the agreed sum and the actual damage. Such contracts are those for the payment of money, and those in which the market price affords a certain standard for the measure of damages. But if from the nature of the contract the damages cannot be calculated with any degree of certainty, as when that which is the subject-matter of the contract has no precise market value, or there are peculiar circumstances contemplated by the contract, the stipulated sum will be held to be liquidated damages."

It is manifest the stipulation in question was not intended as a letting of "tract A" or to create the relation of landlord and tenant between plaintiffs and defendant and it is a misnomer to speak of the stipulated payments as a rental. The parties intended that "tract A" should be vacated just as soon as the new terminal could be established and the obvious purpose of providing a progressively increasing scale of monthly payments was to coerce defendant into a speedy vacation of the right of way over that tract and to impose an interminable and ever increasing punishment for a breach of the stipulation, a punishment so harsh and oppressive, so disproportionate to the subject-matter of the stipuluation as to preclude the thought that the parties had in mind the liquidation of the reasonable damages that would be sustained by plaintiffs in consequence of a breach by defendant. The stipulation for damages must be regarded as a penalty and, therefore, as nonenforceable. Plaintiffs are entitled to recover in this action on account of defendant's breach but the measure of their damages is the actual loss sustained by them in consequence of defendant's occupation of "tract A." Such damages are susceptible of accurate measurement. The judgment is reversed and the cause remanded. All concur.