W. A. WOODS, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, July 2, 1915.

1. NEGLIGENCE: Railroads: Stockyards Gates. The plaintiff sued to recover damages against the defendant by reason of a stockyards gate falling on him, whereby he was seriously and painfully injured. The gatepost was rotten and the top hinge was lose and when the plaintiff attempted to open the gate it fell on him. *Held*, that he was entitled to recover.

2. ———: ———: ———: Invitee. Where a stockyards is maintained by a railroad company, for the benefit of its carrying business, one going there connected with such carrying business is an invitee and the railroad owes such person the duty to observe ordinary care to see that he is not injured.

3. ———: ———: Res Adjudicata. When one dismisses a case before there is an adjudication on the merits, he is not precluded from filing another suit and obtaining an adjudication on the merits in his favor, because where a plaintiff suffers a voluntary nonsuit which was, in effect a dismissal of his case, there is not *res adjudcata* as to the merits.

4. ———: ———: ———: Duty to Use Care. Although it is negligence for a railroad company to keep the gate of a stock pen in reasonably safe repair, it is not actionable negligence unless the company owes to the particular person injured thereby the duty to keep its stock pen and premises reasonably safe.

Appeal from Bates Circuit Court.—*Hon. C. A. Calvird,* Judge.

AFFIRMED.

*J. F. Green, Scott & Bowker, D. C. Chastain* and *R. T. Railey* for appellant.

*Silvers & Silvers* and *Silvers & Dawson,* for respondent.

TRIMBLE, J.—Plaintiff, in attempting to open a gate leading into one of the pens in defendant's stockyards at its shipping station of Foster, Missouri, was seriously and painfully injured by the gate falling upon him. He brought this suit for damages. The petition charged that defendant had allowed the gatepost to remain in a rotten condition whereby the top hinge became loose rendering the gate dangerous and unsafe, which defendant knew, or of which it could have known by the exercise of ordinary care, and which gate defendant was in duty bound to keep in reasonably safe repair. A trial resulted in a verdict and judgment for plaintiff, and defendant has appealed.

The record discloses substantial evidence from which the jury could find that on account of the decayed condition of the gatepost at the place where the top hinge had been fastened, the same had become loose and the gate was liable to fall over upon anyone who attempted to open it without knowledge of its defect; that the gate, when closed, was in proper position and gave no indication of its insecurity; that the loose hinge was on the inside of the pen and plaintiff approached the gate from the outside, and hence the condition of the hinge was not observable to him and he had no knowledge of the defect; that this condition was known to defendant for a sufficient length of time to have enabled it, in the exercise of ordinary care and reasonable dispatch, to have repaired the gate long before the injury occurred. Consequently neglect on the part of defendant was shown, and there is no room for holding, as matter of law, that plaintiff was guilty of contributory negligence.

It is insisted, however, that plaintiff sustained no relation whatever to defendant, save, perhaps, that of a mere licensee, and hence defendant owed no duty to plaintiff to keep its shipping premises and facilities in repair but only the duty to refrain from wantonly injuring him. The evidence and the verdict unquestionably show that defendant omitted to keep the gate in reasonable safe repair. While this was negligent, yet it would not, in this case, constitute *actionable* negligence unless defendant owed to this particular plaintiff the duty of keeping its stock pen and premises reasonably safe. The question whether or not defendant owed this duty to plaintiff depends upon whether the circumstances justly demand "that defendant observe care for plaintiff's safety."

As disclosed by the record and found by the verdict, those circumstances were these: Defendant maintained the stockyards and pens therein for the purpose of receiving live stock intended for shipment over its road. A Mr. Smith, who was engaged in buying up cattle and hogs and shipping them over said road, had arranged for a car to ship some live stock from Foster to Kansas City. A part of the live stock intended for this shipment had been purchased by him of the plaintiff, and plaintiff was to deliver said stock in the stockyards, from whence Smith was intending to ship it. It was in opening the gate into the stock pen for the purpose of making this delivery that the plaintiff was injured. The stock thus delivered by plaintiff was received therein by Smith and was actually shipped out that day over defendant's road pursuant to the arrangement made with the agent for the car as hereinbefore stated. Smith, the shipper, was there on the ground to receive the stock in the pens and to attend to the immediate shipment thereof over defendant's line. Plaintiff was expressly directed by Smith to put the stock in the particular pen the gate to which

plaintiff was endeavoring to open when he got hurt. From this it can be readily seen that plaintiff was not on defendant's premises solely on his own business, or merely for his own pleasure, curiosity or benefit. The placing of the stock in the pen was a matter in which all three of them, plaintiff, Smith and the defendant, had an interest. The facilities of the yards were extended to Smith as a shipper and he was invited and expected to use them. In order for him to ship over defendant's road he must have the stock in the defendant's shipping pen. Instead of driving the stock there himself he stipulated with the one from whom he purchased that he should do that for him. The delivery of the stock in the pens was a necessary preliminary to defendant's business as a carrier thereof and of its deriving profit therefrom. In maintaining the stockyards, defendant impliedly invited Smith, the shipper, and all whom he might succeed in getting to do such preliminaries for him, to enter said stockyards for the purpose of such shipments. Plaintiff was not a trespasser nor did he enter the stockyards purely and solely for his own interest, profit or pleasure. There was an interest or advantage accruing to Smith, plaintiff and the railroad in the stock being placed in the pen. And this fact of common interest or advantage is what distinguishes plaintiff's position, making it that of an invitee rather than a mere license. [Bennett v. Railroad Co., 102 U. S. 577, l. c. 584-5; Archer v. Union Pacific R. Co., 110 Mo. App. 349, l. c. 353.] The stockyards were maintained for the benefit of defendant's carrying business, and plaintiff's coming there was connected with that business, and that made him an invitee. [29 Cyc. 455; Phillips v. Library Co., 27 Atl. 478, l. c. 480; Plummer v. Dill, 156 Mass. 426; Parker v. Portland Pub. Co., 69 Me. 173, l. c. 176; Bennett v. Railroad Co., 102 U. S. 577; Carr v. Mo. Pac.

R. Co., 195 Mo. 214, l. c. 225; Woods v. Missouri Pac.' R. Co., 149 Mo. App. 507, l. c. 510.]

If plaintiff was an invitee then the defendant owed him the duty to observe ordinary care that he does not receive injury. [Gloser v. Rothschild, 221 U. S. 180; O'Donnell v. Patton, 117 Mo. 13; Welch v. McAllister, 15 Mo. App. 492; Archer v. Union Pacific R. Co., supra; Brock v. St. Louis Transit Co., 107 Mo. App. 109, l. c. 116.] Plaintiff, in putting the stock in the pen, was performing a part of his contract with Smith, it is true, but he was also doing more. He was performing one of the things necessary to be done in carrying out Smith's contract with the railroad, one of the necessary preliminaries to the defendant's business of carriage, and he was making that use of defendant's premises for which they were built and maintained, and clearly there was an implied invitation to him to use the stockyards for that purpose. To say that merely because plaintiff himself was not intending to ship, he was a bare licensee and not an invitee, is to place a far too narrow limitation upon the rights of those who, at the direction of the shipper, assist him in using the yards for a purpose beneficial to the defendant.

A former action for the same injury was instituted by plaintiff prior to the brining of this suit. In that action a trial was entered into, but at the close of plaintiff's evidence, the trial court sustained a demurrer thereto, whereupon plaintiff took an involuntary nonsuit with leave to move to set the same aside. This motion was filed and overruled. Whereupon plaintiff appealed to this court where the action of the trial court was approved. [Woods v. Missouri Pacific R. Co., 149 Mo. App. 507.] Plaintiff at once instituted this suit, and, at the trial, supplied the testimony which this court had held was lacking in the former case. Defendant contends that the present suit cannot now

be maintained since the cause of action, by reason of our former judgment, has become *res adjudicata.*

But it will be noticed that in the former suit there was no adjudication of the case upon its merits. The plaintiff suffered an involuntary nonsuit which was, in effect, a dismissal of his case. The ground of the judgment in the former suit was not that plaintiff had no cause of action but that he had not brought forward sufficient proof to establish that cause of action. Section 1900, R. S. 1909, provides that if an action shall have been commenced and plaintiff suffer a nonsuit he may commence a new action within a certain time. In Mason v. Kansas City, etc., R. Co., 226 Mo. 212, it was held that the judgment of the lower court refusing to set aside an involuntary nonsuit was merely a judgment of involuntary nonsuit and not a final judgment upon the merits of the cause. It was also held, construing Choteau v. Rowse, 90 Mo. 191, that an appeal from the order overruling the motion to set aside the nonsuit suspended the judgment of dismissal until the case was determined in the appellate court, and that plaintiff, under the statute, could begin another suit within one year thereafter. In other words, the appeal by plaintiff from the order refusing to set aside the involuntary nonsuit was merely a litigation of the correctness of the trial court's ruling on that point and the judgment of affirmance in the appellate court went no further than did the order of the trial court. That order did not finally adjudicate the cause of action but only dismissed plaintiff's suit. A judgment of nonsuit is a complete determination of the *suit,* but not an adjudication of the merits of the controversy. [Wiethaupt v. St. Louis, 158 Mo. 655; Manning v. Conn. Mut. Fire Ins. Co., 176 Mo. App. 678.] In Hewitt v. Steele, 136 Mo. 327, plaintiff in a former suit, after suffering an involuntary nonsuit, appealed from the order refusing to set it aside, and the action of the trial court was affirmed. Defendant pleaded *res ad-*

*judicata,* but that plea was disallowed although the case was reversed upon another ground, namely, because there was "no substantial evidence to support plaintiff's cause of action." In view of the foregoing we are of the opinion that plaintiff's cause of action did not become *res adjudicata* by reason of the former suit.

The case of Johnson v. United Railways Co., 243 Mo. 278, does not announce a different rule. The judgment of the trial court in the former suit therein referred to, was leveled at the petition *as stating no cause of action,* and that judgment was upheld on appeal. The petition in the second suit stated the same facts. It differed from the first petition only in that it prayed for an accounting while the first petition, in addition to praying for an accounting, asked for an injunction and for a rescission. The cause of action for an accounting being in both petitions, and the facts being the same in both petitions, of course an adjudication on the first that it stated no cause of action was an adjudication of the question whether or not the second stated a cause. But that is not the situation in the case at bar. Neither in the first nor in the second cases in this controversy was there any issue over the sufficiency of the petition, and the adjudication in the first case did not extend to the cause of action itself but only to the judgment of nonsuit for an insufficiency of proof.

The claim that plaintiff's instruction No. 1 is erroneous is without merit.

The judgment is affirmed. All concur.