STATE OF MISSOURI to the use of NAT J. GOODMAN et al., Appellants, v. REGENT LAUNDRY COMPANY et al., Respondents.

St. Louis Court of Appeals, December 30, 1916.

1. **CONTRACTS: Non-execution by Some of the Parties: Effect on Signatories.** Where a written contract is signed by some of the parties named therein, but not by all, the presumption is, that the writing took effect and was binding upon the parties who signed

State to use v. Laundry Co.

it, upon its delivery; and where one of the signatories attacks such contract on the ground it was not signed by all, the burden is upon him to show that, when he signed it, the intention and understanding was, that it should not take effect until signed by all.

2. ——: ——: ——: Estoppel: Acceptance of Benefits. Parties who receive and retain the full benefits accruing to them under a written instrument which they signed and delivered as their contract, cannot be heard to repudiate its obligations on the ground that it was not signed by all the parties named therein.

3. RES ADJUDICATA: Nonsuits: Conclusiveness of Judgment. Although a judgment of nonsuit completely terminates and disposes of the particular suit, and is final in the sense that an appeal will lie therefrom, where the nonsuit is involuntary, nevertheless it is not a final judgment on the merits nor *res adjudicata* as to the cause of action, and this is true even though, on appeal by the plaintiff, the judgment of involuntary nonsuit is affirmed by the appellate court.

4. NONSUITS: Legal Effect: Judgments. The legal effect of a judgment of nonsuit is that of a judgment of discontinuance or dismissal whereby the merits are left untouched.

5. CORPORATIONS: Sale of Corporate Stock: Breach of Contract: Measure of Damages. The measure of damages for the breach of a provision in a contract for the sale of corporate stock, that the debts of the corporation did not exceed a stipulated amount, is an amount proportioned to the amount of such indebtedness in excess of the stipulated amount, in the ratio that the number of shares so sold bears to the number of shares outstanding at the time.

6. VERDICTS: Trial Practice: Computation of Liquidated Damages by Court: Harmless Error. Notwithstanding Sec. 1993, R. S. 1909 provides that when a verdict shall be found for plaintiff, in an action for the recovery of money only, the jury shall assess the amount of the recovery, the giving of an instruction which directed the jury that, in the event they found for defendant upon his counterclaim seeking the recovery of money, they should find for him in a certain sum, was not reversible error, in view of Secs. 1850 and 2082, R. S. 1909, where the amount of such recovery did not exceed the amount to which defendant was entitled to recover as a matter of law, in the event the finding was for him, and interest thereon from the date of demand.

7. INTEREST: Computation: Demand. The institution of a suit constitutes a demand, and interest on the amount of recovery may be computed from such time.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor,* Judge.

State to use v. Laundry Co.

AFFIRMED.

*Wm. F. Fahey* for appellants.

(1) The writing offered in evidence was not a contract, and was not binding upon the appellants, because it was not signed by Allen S. Cahn, an essential party thereto. 32 Cyc. 45, 46; 9 Cyc. 282; Muehlbach v. Railroad, 166 Mo. App. l. c. 310, 311; Stub v. Grimes, 38 Minn. 318, l. c. 319-320; Arnold v. Scharbauer, 116 Fed. 492; Graham v. Caperton, 57 Southern 741; Bruch v. Shafer, 45 Pa. Supt. Ct. Rep. 614, 615; James v. Darby, 100 Fed. 224; Crittenden v. Armour, 80 Iowa 221; Mathews v. Barnes, 112 Mass. 463, l. c. 446; Naylor v. Stine, 96 Minn. 59. (2) The said writing, or alleged contract, is barred by an unmodified and unreversed adverse judgment in a former suit instituted thereon. Elliott on Contracts, sec. 1985; 11 Cyc. 757; 23 Cyc. 1529; Johnson v. Railroad 243 No. l. c. 290; Coleman v. Dalton, 71 Mo. App. 14, l. c. 23; Paddock v. Railroad, 155 Mo. App. 326; Bridge Co. v. Stone, 194 Mo. 175; Spencer v. Watkins, 169 Fed. 379, l. c. 385; Truesdale v. Trust Co., 67 Minn., l. c. 460; Commissioners, etc. v. McIntosh et al., 30 Kan. 234. (3) Instruction No. 9, given at respondent's request, instructing the jury that the attachment suit was not decided by the court, was erroneous. See authorities under point 2. (4) Instruction No. 6, given at the instance of respondents, concluded with merely an abstract statement of the law, thus injecting a foreign issue in the case and confusing the jury, and thereby constituting prejudicial error. Grout v. Railroad, 151 Mo. App. 330, l. c. 333. (5) In an action for breach of contract, it is incumbent upon the party who alleges he sustained damages to prove what the damages were, and the amount thereof, and one who proves damage, but does not give any evidence to prove the amount thereof, can recover only nominal damages, if anything. Noffsinger v. Bailey, et al., 72 Mo. 216, l. c. 219; Cronan v. Stuttsman et al., 151 S. W. (Mo. App.) 166. (6) Instruction No. 8, given at respondents' request, and instructing the jury that, if their verdict be in favor of respondent Wil-

son on his counterclaim, his damages shall be assessed in the sum of $667, was erroneous. See authorities under Point 5. (7) It is the duty of the court to construe an unambiguous writing, and adjudge its conclusions as a matter of law, without reference to the jury. Meek v. Hurst, 223 Mo. 688, 122 S. W. 1022; Donovan v. Boeck, 217 Mo. 70, 116 S. W. 543; Insurance Co. v. Wolfson, 124 Mo. App. 286, 101 S. W. 162.

*Frank H. Haskins* for respondent.

(1) The writing offered in evidence was a binding contract upon those who signed it. Muehlbach v. Railroad, 166 Mo. App. 305, 314; Gay v. Murphy, 134 Mo. 98, 106; State ex rel. v. Sandusky, 46 Mo. 377, 380; Cutter v. Whittemore, 10 Mass. 442. (2) The instruction or the presumption of law regarding the validity of the contract, was correct. Muehlbach v. Railroad, 166 Mo. App. 305, 314; Gay v. Murphy, 134 Mo. 98, 106; State ex rel. v. Sandusky, 46 Mo. 377, 380. (3) The execution of the contract having been submitted to the jury under proper instructions and they having found the existence of a contract the agreed statement of facts submitted showed positively and accurately the amount of damages sustained. The action of the court in computing the amount of the verdict where the amount which under the law would constitute damage is agreed upon, is not reversible error if the computation is correct: Daud v. Reid, 53 Mo. App. 553; Wells v. Zallee, 59 Mo. 509. (4) The alleged adverse judgment in a former suit was a judgment of non-suit and not a final judgment. A judgment of non-suit is not *res adjudicata.* Burns v. Marsh, 144 Mo. App. 412; Dean v. Railroad, 148 Mo. App. 428; Zeller v. Ransom, 140 Mo. App. 220.

ALLEN, J.—This is an action upon an attachment bond executed by defendants Regent Laundry Company, a corporation, and Wilson, as principals, and defendants Renard and Young, as securities, in the penal sum of $2200. Defendant Wilson interposed a counterclaim, the nature of which will be later shown. The trial, before

the court and a jury, resulted in a verdict for plaintiffs on the bond sued upon, assessing their damages at the sum of $518.77, and in favor of defendant Wilson on his counterclaim in the sum of $667. From a judgment entered accordingly, the plaintiffs prosecute the appeal now before us.

The attachment suit, in which was given the bond here sued upon, was instituted on or about September 4, 1906, and grew out of a written agreement of date August 3, 1906, executed by these plaintiffs, Nat J. Goodman and Stella M. Goodman, the defendants Regent Laundry Company and Chas. H. Wilson, one D. L. Cahn and one B. S. Seasongood. In the writing defendant Wilson was named as the party of the first part, these plaintiffs as parties of the second part, D. L. Cahn and Ellen Cahn, his wife, as parties of the third part, Seasongood as party of the fourth part, and the defendant Regent Laundry Company, as party of the fifth part; but neither Ellen Cahn nor the Regent Laundry Company signed the instrument. This agreement provided that the party of the first part therein (Wilson) agreed to purchase from the parties of the second and third parts (these plaintiffs and Cahn and wife) thirty-five shares of the capital stock of the Regent Laundry Company agreeing to pay therefor at the rate of $125 per share, such purchase price to be paid as follows: The sum of $1850 to be paid the Mercantile Trust Company to take up a note of the Regent Laundry Company; $2200 to be paid to these plaintiffs, and the remaining $325 to be paid to Cahn and his wife. Following this the agreement contained a paragraph as follows, viz:

"And the parties of the second, third and fourth parts hereby agree and covenant with the party of the first part that with the exception of the said one thousand eight hundred fifty dollar ($1,850) note, the party of the fifth part is not indebted to any person, firm or corporation in any sum other than the current bills for the month of July, 1906, excepting perhaps $200, and they do hereby warrant that the outstanding accounts

belonging to the party of the fifth part will at least equal said current bills for the month of July, 1906.''

The agreement further provided that the plaintiffs herein would not in any way engage in the laundry business for a certain period of time within a certain prescribed territory; that they agreed to sell to Wilson twenty-five shares of the capital stock of the Regent Laundry Company at the price mentioned; and that Cahn and wife agreed to sell to Wilson ten shares of the capital stock of said company.

Though the instrument was not signed by Mrs. Cahn nor the Regent Laundry Company, it was delivered and was acted upon. It appears that defendant Wilson paid the note of the Regent Laundry Company for $1850, paid the said sum of $2200 to these plaintiffs, and the sum of $325 to Mrs. Cahn, and received the thirty-five shares of stock of the Regent Laundry Company, being one-half of that company's capital stock. Thereafter it was discovered that the Regent Laundry Company was indebted to various persons in the sum of $1154.77, exclusive of current bills for the month of July, 1916, and exclusive of the note for $1850 above mentioned. Thereupon the Regent Laundry Company and Wilson instituted against these plaintiffs and Cahn and Seasongood, the attachment suit above mentioned, as for a breach of the covenant contained in the paragraph of the aforesaid contract which we have quoted in full above. In that action there was, at the court's direction, a verdict for the defendants therein (these paintiffs) on their plea in abatement. Upon the trial on the merits, the plaintiffs therein were forced to a nonsuit, and upon the court's refusal to set the same aside they appealed to this court. On that appeal—for the reason stated in the opinion—we could review only the record proper, and finding no error therein the judgment of nonsuit entered by the circuit court was affirmed. [See Regent Laundry Co. v. Goodman, et al, 142 Mo. App. 716, 121 S. W. 1082.] Thereafter, to-wit, on November 19, 1909, the present action was instituted by these plaintiffs on the bond given in the attachment suit as stated above.

It is unnecessary to notice the petition herein. The joint answer of defendants Renard and Young admits the execution of the bond sued upon and denies each and every other allegation of the petition. The answer of defendant Regent Laundry Company is a general denial. Defendant Charles H. Wilson interposed a general denial, coupled with a counterclaim predicated upon a breach of plaintiffs' said covenant in the contract of August 3, 1906, being the identical cause of action upon which Wilson and his codefendant Regent Laundry Company had sought a recovery against these plaintiffs in the above-mentioned attachment suit; Wilson averring that the former action, prosecuted by him and the Regent Laundry Company, resulted in a nonsuit as we have stated above.

In their reply the plaintiffs plead that in the attachment suit the ruling of the trial court, in forcing the plaintiffs therein to a nonsuit, was based upon a determination by that court that the written instrument of August 3, 1906 created no obligation in favor of defendant Wilson and his codefendant Regent Laundry Company, or either of them, against these plaintiffs; "that the subject-matter of said counterclaim has been finally adjudicated," and that defendant Wilson "is barred from further action thereon or from seeking to question said determination, finding and judgment." The reply admits that on or about August 3, 1906, defendant Wilson agreed to purchase and did purchase from plaintiffs and Cahn and wife thirty-five shares of capital stock of the Laundry Company, and paid the consideration therefor as stated above, but avers, in effect, that the alleged written instrument upon which the counterclaim is predicated never became a valid and subsisting contract binding upon plaintiffs; that it was understood and agreed, between all of the parties concerned, that the writing should be signed by all of the parties mentioned therein before becoming valid and effective; that it was in fact not signed by the Regent Laundry Company nor by Mrs. Ellen Cahn, by reason whereof it acquired no validity.

Certain denials are made, putting in issue matters set up in the counterclaim, but they need not be here detailed.

On motion of defendant Wilson the court struck out all of that part of the reply which sought to set up the ruling and judgment in the attachment suit as a bar to the prosecution of defendant Wilson's counterclaim.

The questions before us on appeal relate entirely to the counterclaim and touching that it need only be said that there was evidence pro and con on the issue as to whether the written agreement of August 3, 1906, was signed by those who executed it, with the understanding and intention that it should not become effective unless signed by all parties named therein; and that plaintiffs' counsel, for the purposes of this case, stipulated that on August 3, 1906, the Regent Laundry Company was indebted to various persons in the sum of $1154.77, exclusive of current bills for the month of July, 1906, and exclusive of the note for $1850 mentioned in the counterclaim.

I.   The first point made by learned counsel for appellant is that the written instrument upon which the counterclaim of defendant Wilson is predicated never became binding upon plaintiffs for the reason that it was never signed by Mrs. Ellen Cahn; and that the court erred in admitting the writing in evidence and in refusing to direct a verdict for plaintiffs on the counterclaim. The trial court, as appears from its rulings throughout, took the view that the writing presumptively took effect and was binding upon the parties who signed it, upon its delivery, and that the burden of proof was on plaintiffs to show that the understanding and intention of such parties were to the contrary.   This is in accord with the settled law in this State as to the general rule applicable to such a situation.

In Muehlbach v. Railroad, 166 Mo. App. l. c. 314, 148 S. W. 453, it is said by JOHNSON, J.:

"The rule applicable to such cases is that a party who signs and delivers an instrument is bound by the obligations he therein assumes although it is not signed

by all the parties named in it unless it appears that the
parties signing mutually intended that it should be in-
choate and incomplete and not take effect as a contract
until signed by all the parties named. [State ex rel v.
Sandusky, 46 Mo. 377; Donnell Mfg. Co. v. Repass, 75
Mo. App. 420; Gay v. Murphy, 134 Mo. 98; Mattoon v.
Barnes, 112 Mass. 463; Dillon v. Anderson, 43 N. Y. 231;
Grafeman Dairy Co. v. St. Louis Dairy Co., 96 Mo. App.
495; Naylor v. Stone, 104 N. W. (Minn.) 685; Edwards
v. Gildemeister, 61 Kan. 141; American Pub. Co. v.
Walker, 87 Mo. App. 503.] And the burden is on the
party attacking the contract to show that when he signed
it was agreed that the contract should not take effect
until signed by all the parties. [Authorities, supra.]"

In State ex rel. v. Sandusky, supra, the Supreme
Court, through WAGNER, J., said:

"We think that the best and most intelligible prin-
ciple is, that where a writing obligatory is prepared to
be signed by several and is not signed by all, whether
it is the act of those who do sign it depends upon the
question whether it was signed and delivered as an es-
crow only until signed by the others, or was delivered as
the writing of the parties signing." The court expressly
approved the rule announced by the Supreme Court of
Massachusetts in Cutter v. Whittemore, 10 Mass. 442.

In Gay v. Murphy, supra, the bond in question had
been signed by the surety merely and not by the princi-
pal; and applying a well recognized rule of law, it was
held that the surety could not be held liable on the in-
strument; but in that connection the court said:

"The rule is different when the bond is signed by
the principal and is not signed by one of the sureties
named in the bond. In such cases the bond is prima facie
binding on all who sign it. And if those who sign it
would avoid responsibility thereon the burden rests upon
them of showing that at the time of its execution it was
agreed that the bond should not be delivered as their
deed until all persons named in the bond as sureties had
executed it."

But in the case before us the written instrument, upon which the counterclaim is predicated, was not only delivered without Mrs. Cahn's signature, but was treated by these plaintiffs and defendant Wilson as a valid subsisting contract between them. The evidence shows that without waiting to procure the signature of Mrs. Cahn, who was unable to be present on account of sickness, plaintiffs, defendant Wilson and Cahn proceeded at once to consummate the ·transaction, Cahn having in his possession his wife's stock indorsed in blank. Defendant Wilson fully performed the contract on his part. Relying thereupon he paid to plaintiffs the full consideration to be paid them for their stock, and paid as well the other consideration mentioned. Plaintiffs have received and retained the full benefits accruing to them under the written instrument which they signed and delivered as their contract, and they cannot now be heard to repudiate its obligations on the ground that it was not signed by all the parties named therein. [See Muehlbach v. Railroad, supra, l. c. 314.]

We need not enter into a discussion of the authorities relied upon by appellants. Some of them are cases dealing with contracts wholly executory; and none of them are persuasive in view of the facts disclosed by this record.

It is argued, in effect, that plaintiffs would have had a remedy by way of contribution against Mrs. Cahn, had she signed, which remedy is lost by her failure to execute the instrument; and that this affords a cogent reason why the writing shoud be held to be not binding on plaintiffs. [See Mattoon v. Barnes, 112 Mass. l. c. 466; Naylor v. Stone, 96 Minn. l. c. 59.] It may be that the fact that a remedy against a party who does not sign is thus lost, will, under appropriate circumstances, be an important factor in the case, bearing upon the question as to whether the parties signing mutually understood and intended that the instrument should be inchoate and incomplete, and ineffective as a contract, until signed by all the parties named. [Muehlbach v. Railroad, supra.] But be this as it may, what influence, if any, this factor

may have in a given case must of necessity depend upon the circumstances surrounding the transaction. In the instant case it appears quite clear that this feature is without material influence. Certainly, in the face of the facts above stated, it would not warrant the court in declaring, as a matter of law, that the contract did not become binding upon those who signed it.

II. Appellants insist, however, that the ruling and judgment in the attachment suit operates as a bar to the prosecution by respondent Wilson of the cause of action upon which his counterclaim is founded, and therefore the court erred in striking out that portion of plaintiffs' reply by which it was attempted to plead the same in bar. There is no merit in this contention. The judgment entered in the attachment case was one of nonsuit. Though the nonsuit was involuntary, and the plaintiffs in that action moved to set it aside, and, upon such motion being overruled appealed, and the appellate court affirmed the judgment, such judgment was none the less one of nonsuit merely. [Mason v. K. C. Belt Ry. Co., 226 Mo. 212, 125 S. W. 1128.] Its legal effect is that of a "judgment of discontinuance or dismissal whereby the merits are left untouched." [Wetmore v. Crouch, 188 Mo. l. c. .654, 87 S. W. 954.] A judgment of nonsuit, though it completely terminates and disposes of the particular suit, and is final in the sense that an appeal will lie therefrom where the nonsuit is involuntary, is not a final judgment upon the merits nor *res adjudicata* as to the cause of action. The cause of action is not merged in a judgment of this character, as in a final judgment on the merits, but survives and may be further prosecuted within the time allowed by law. [See Mason v. K. C. Belt R. Co., supra; Hewitt v. Steele, 136 Mo. 327, 38 S. W. 82; Withaupt v. City of St. Louis, 158 Mo. 655, 59 S. W. 960; Manning v. Insurance Co., 176 Mo. App. 678, 159 S. W. 750; Woods v. Mo. Pac. Ry. Co., 192 Mo. App. 165, 179 S. W. 727.] The ground upon which the court trying the attachment suit gave the peremptory instruction forcing the plaintiffs therein to a nonsuit, is not here a

matter of consequence. We are concerned only with the fact that the judgment entered was one of nonsuit, operating as a discontinuance or dismissal of that particular action.

III. The court instructed the jury that if they found for defendant Wilson on his counterclaim to assess his damages at the sum of $667. Appellants argue that the giving of this instruction constituted reversible error.

In the first place, it is appellants' contention that defendant Wilson did not prove that he suffered any damage by reason of the alleged breach by plaintiffs of the covenant counted upon in the counterclaim, and could, at most, recover nominal damages only. The argument is that Wilson failed to affirmatively show that the stock which he purchased on August 3, 1906, was owned by him at the time when the debts of the Regent Laundry Company—in excess of the sum mentioned in the contract as being the total indebtedness of the company —were paid, or when the suit was brought. But the fact is that Wilson, in conformity to the terms of the contract, acquired one-half of the stock of the corporation, and that the said covenant of plaintiffs was broken immediately when made; and the presumptions thus afforded suffice to sustain a recovery of substantial damages. And we take it that, prima facie, defendant Wilson, having purchased one-half of the capital stock of the corporation, is to be regarded as having been damaged to the extent of one-half of the amount by which the corporation's indebtedness exceeded that which plaintiffs covenanted that it would be found to be. Presumptively the value of Wilson's stock was less by one-half of this additional indebtedness than it would have been had such additional indebtedness not existed.

But it is argued that in any event the court erred in directing the jury to return a verdict for plaintiff for a definite sum, thereby depriving the jury of the right to assess the damages. It is true that Section 1993, Revised Statutes 1909, provides that "when a verdict shall

be found for the plaintiff in an action for the recovery of money only, the jury shall also assess amount of the recovery." Adjudged by some of the earlier decisions in this State, applying to this statute, the giving of this instruction would constitute fatal error; though in Wells v. Zallee, 59 Mo. 509, a suit on a promisory note it was held that the giving of an instruction directing the jury as to what amount to allow if they found for plaintiff, was not reversible error, the amount 'being correcty calculated; which ruling was followed in Doud v. Reid, 53 Mo. App. 553. However, in the recent case of Beekman Lumber Co. v. Acme Harvester Company, 215 Mo. 221, l. c. 251, 114 S. W. 1087, the giving of an instruction directing the amount of a verdict on an account, including interest calculated and added to the amount due on account, was held not to be fatal error notwithstanding the above statute, since it appeared that the items of the account were not disputed, and the interest had been properly calculated. In disposing of the matter the court invoked section 2082, Revised Statutes 1909, which commands that an appellate court shall not reverse a judgment unless it believe that error was committed against the appelant or plaintiffs in error, materially affecting the merits of action. We followed this ruling in McCormick Machine Co. v. Blair, 181 Mo. App. 593, 164 S. W. 656, and in Moore v. McHaney, 191 Mo. App. l. c. 698, 178 S. W. 258.

In the case before us, it is admitted that on August 3, 1906, the Regent Laundry Company was indebted to various persons in the sum of $1154.77, exclusive of current bills for the month of July, 1906, and exclusive of the note for $1850 mentioned. Deducting from the $1154.77 the sum of $200, in accordance with the terms of the paragraph of the contract above quoted, one-half of the remainder, to-wit, $477.38, will constitute Wilson's damages, exclusive of interest, under the rule stated above. The institution of the attachment suit, September 4, 1916, constituted a demand by Wilson; and if interest be computed on $477.38 from said date to the date of the trial below, and added to said sum, the to-

tal will be found to be a little more than $667, the a-
mount of the verdict on the counterclaim under this in-
struction.    The action of the court therefore in thus
directing the amount for which the jury should return
a verdict, on the counterclaim, if for defendant Wilson,
cannot be said to be error materially affecting the mer-
its of the action (section 2082, supra), or affecting the
substantial rights of appellants (see Sec. 1850, Rev.
Stat. 1909).

IV.  Other questions raised. respecting the instruc-
tions given are either disposed of by what we have said
above or are not such as to warrant discussion..

The judgment is affirmed.  *Reynolds, P. J.,* and
*Thompson, J.,* concur.