

# In the Missouri Court of Appeals
## Eastern District

**DIVISION FIVE**

| | | |
|---|---|---|
| KATHRYN JIMENEZ, | ) | No. ED101015 & ED101241 |
| | ) | |
|     Petitioner/Respondent, | ) | Appeal from the Circuit Court of the |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Michael T. Jamison |
| CINTAS CORPORATION, ET AL., | ) | |
| | ) | |
|     Respondent/Appellant. | ) | Filed: January 13, 2015 |

**INTRODUCTION**

Cintas Corporation and its subsidiaries ("Cintas"), as well as its managers Timothy Baker and Brian Fitzsimmons, (collectively "Defendants") appeal from the trial court's order denying their motion to compel arbitration of the employment discrimination claims brought by Kathryn Jimenez. Defendants contend the trial court erred in failing to compel arbitration of Jimenez's claims pursuant to a valid agreement, because there was sufficient consideration based upon: (1) the parties' mutual promises to arbitrate disputes arising out of Jimenez's employment relationship; and (2) Cintas's offer to Jimenez of "new" or "future" at-will employment. Cintas also contends the agreement to arbitrate was part of an enforceable contract based upon an offer and acceptance, and the terms of that agreement were not unconscionable. We affirm.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2011, Jimenez began working for Cintas as a Fire Service Technician. She continued in this capacity until June 2012, when Cintas terminated her employment. On July 18, 2013, Jimenez filed a petition against Defendants in the Circuit Court of St. Louis County, challenging her termination and alleging that during her employment she suffered discrimination and harassment by Baker and Fitzsimmons, who acted in their capacity as managers for Cintas.

On August 26, 2013, Defendants filed a motion to compel Jimenez to arbitrate her claims against Cintas, attaching a document entitled "Missouri Employment Agreement for Sales, Service and Marketing Personnel" ("Agreement"). The first page of the Agreement is dated December 12, 2011, and contains Jimenez's purported signature, as well as provisions invoking the Federal Arbitration Act as the law by which the agreement "will be interpreted, governed and enforced."

Section 8 of the Agreement, entitled "Exclusive Method of Resolving Disputes or Differences," states that disputes "between Employee and Employer concerning whether either party at any time violated any duty, right, law, regulation, public policy, or provision of this Agreement" that cannot be resolved in good faith, must be "resolved through impartial and confidential arbitration." Section 8 states that both Cintas and Jimenez must arbitrate any unresolved "claims for damages, as well as reasonable costs and attorney's fees, caused by [the other party's] violation of any provision of this Agreement or any law, regulation or public policy." It further provides:

> The rights and claims of Employee covered by this Section 8, including the arbitration provisions below, specifically include but are not limited to all of Employee's rights or claims arising out of or in any way related to Employee's employment with Employer, such as rights or claims arising under the Age Discrimination in Employment Act, as amended, Title VII of the Civil Rights Act of 1964, as amended (including amendments contained in the Civil Rights Act of

1991), the Americans With Disabilities Act, 42 U.S.C. § 1981, the Fair Labor Standards Act, the Employee Retirement Income Security Act, state anti-discrimination statutes, other state or local laws regarding employment, common law theories such as breach of express or implied contract, wrongful discharge[,] defamation, and negligent or intentional infliction of emotional distress. Excluded from the arbitration provisions below in this Section 8 are all unemployment benefit claims, workers' compensation claims, *claims for a declaratory judgment or injunctive relief concerning any provision of Section 4 of this Agreement*, and claims not lawfully subject to arbitration, including charges or complaints filed with an administrative agency (but not litigation connected with any such charge or complaint). (Emphasis added).

Consequently, the Agreement requires the arbitration of all claims, except those expressly excluded. It excludes from the requirement to arbitrate all: "workers' compensation claims, unemployment benefits claims, claims for a declaratory judgment or injunctive relief concerning any provision of Section 4 and claims not lawfully subject to arbitration . . . ."

Section 4 is entitled "Employee's Acknowledgement and Covenants." The Section 4 claims exempted from arbitration relate to covenants binding solely upon Jimenez, and prohibit her from disclosing confidential material and information belonging to Cintas, competing against Cintas, and soliciting Cintas's customers and employees (the "Non-Compete Provisions"). Section 4 also contains a clause stating:

Employer may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction or other injunctive relief to enforce Employee's compliance with the obligations, acknowledgments and covenants in this Section 4. *Employer may also include as part of such injunction action any claims for injunctive relief under any applicable law arising from the same facts or circumstances as any threatened or actual violation of Employee's obligations, acknowledgments and covenants in this Section 4.* (Emphasis added).

On October 21, 2013, Jimenez filed a response in opposition to Defendants' motion to compel arbitration. In support, she attached a sworn affidavit, stating that: (1) she does not recall reading or signing the Agreement produced by Defendants, receiving a copy of it, or reviewing

3

its terms; and (2) she neither started nor continued her employment with the intent to be bound by its provisions.

The court held an evidentiary hearing, and denied Defendants' motion to compel arbitration. In its order, the court declined to address whether Jimenez had actually signed the Agreement, reviewed it, or received a copy of it, concluding instead that it "need not address these matters since the third element necessary to create a binding contract, bargained for consideration, is dispositive of this matter." The court stated that the parties had agreed that Jimenez was an "at-will" employee. It then concluded the agreement to arbitrate lacked consideration because, "there cannot be sufficient consideration given in an employment contract with an at-will employee such as to consummate a binding contract to arbitrate any dispute between the parties." The court further held that even if the arbitration agreement contained consideration, it was unenforceable because its terms were unconscionable. Defendants appeal.

## STANDARD OF REVIEW

Whether arbitration can be compelled under the terms of an employment agreement is a question of contract law that we review de novo. State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 856 (Mo. banc 2006); Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 21 (Mo. App. W.D. 2008). Generally, "when faced with a motion to compel arbitration, we must consider three factors: first, whether a valid arbitration agreement exists; second, whether the specific dispute falls within the scope of the agreement; and third, whether the agreement is subject to revocation under applicable principles of contract law. Frye v. Speedway Chevrolet Cadillac, 321 S.W.3d 429, 434-35 (Mo. App. W.D. 2010). The party seeking to compel arbitration has the burden of proving the existence of a valid and enforceable arbitration agreement. Whitworth v. McBride & Sons Homes, Inc., 344 S.W.3d 730, 737 (Mo. App. W.D. 2011).

**DISCUSSION**

In their first two points, Defendants argue that the parties formed a valid arbitration agreement providing two separate types of consideration: (1) Cintas's offer of "new" or "future" at-will employment; and (2) Cintas's and Jimenez's mutual promises to arbitrate. Jimenez responds that the arbitration agreement is effectively devoid of consideration, and therefore invalid, because her employment relationship with Cintas was "at-will," and Cintas's promise to arbitrate was not mutually binding. We agree that, under Missouri law, neither Jimenez's at-will employment nor the arbitration provision provides consideration to support a contractual obligation on the part of Jimenez to arbitrate disputes with Cintas. Our disposition of these first two points is dispositive of the appeal, therefore we do not address Defendants' points three and four.[1]

"[A]rbitration is a matter of contract, and parties will be compelled to arbitrate their claims only if the arbitration agreement satisfies the essential elements of a valid contract." Marzette v. Anheuser-Busch, Inc., 371 S.W.3d 49, 52 (Mo. App. E.D. 2012). To resolve disputes concerning the validity of a contract, we apply the usual rules of state contract law and canons of contract interpretation. Whitworth, 344 S.W.3d at 736 (quoting Frye, 321 S.W.3d at 434-435); Schneider, 194 S.W.3d at 856. Although the Federal Arbitration Act is to be applied when enforcing a contract that invokes its provisions, "Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate." Schneider, 194 S.W.3d at 856 (citing State ex rel. PaineWebber, Inc. v. Voorhees, 891 S.W.2d 126, 128 (Mo. banc 1995)).

---

[1] Our discussion below addresses only whether the contract contained valid consideration, a question regarding contract formation under Missouri law. Thus, we do not address the issue of enforceability of the contract "according to the federal arbitration act," since enforceability presupposes the existence of a validly formed contract, and, here, the arbitration provision delegates to the arbitrator the authority to resolve such disputes. See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 70-72 (2010) (holding a delegation provision may vest the arbitrator, not the courts, with the authority to determine whether the agreement was unconscionable); see also Netco, Inc. v. Dunn, 194 S.W.3d 353, 360 (Mo. banc 2006) (recognizing the scope of arbitration agreements is to be liberally construed under the Federal Arbitration Act).

In Missouri, legal consideration is essential for the formation of any contract, including one for arbitration. <u>Kunzie v. Jack-In-The-Box, Inc.</u>, 330 S.W.3d 476 (Mo. App. E.D. 2010). Consideration is created by "either a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." <u>Morrow</u>, 273 S.W.3d at 25. Where "two considerations are given for a promise, one of them being legally sufficient to support a promise and the other not sufficient, the promise is enforceable." <u>Earl v. St. Louis Univ.</u>, 875 S.W.2d 234, 236-237 (Mo. App. E.D. 1994); <u>Y.W. v. Nat'l Super Markets, Inc.</u>, 876 S.W.2d 785, 791 (Mo. App. E.D. 1994) ("contract which has several items of consideration, one sufficient and one insufficient, may be upheld on the strength of the valid consideration."). Therefore, if consideration is provided by either: (1) the parties' mutual promises to arbitrate; or (2) Jimenez's "future" or "new" at-will employment, as Defendants claim, we will find the arbitration agreement contains consideration.

## A. At-Will Employment Does Not Constitute Consideration

In their second point,[2] Defendants contend that Cintas's promise of at-will employment provided the consideration needed to form a legally valid arbitration agreement, because her employment can be characterized as "new" or "future" as opposed to "continued" at-will employment. Jimenez, however, correctly responds that in Missouri, a promise of at-will employment does not qualify as consideration, regardless of whether it is characterized as "new," "future," or "continued" at-will employment. Thus, it does not provide the consideration needed to support the arbitration agreement in this case.

Defendants concede that Jimenez was an at-will employee. They also agree that under <u>Morrow v. Hallmark Cards, Inc.</u>, 273 S.W.3d 15 (Mo. App. W.D. 2008), a promise of "continued" at-will employment will not constitute consideration for purposes of enforcing an

---

[2] For ease of analysis, we address Defendants' Points I and II in reverse order.

arbitration agreement. See also Clemmons v. Kansas City Chiefs Football Club, Inc., 397 S.W.3d 503, 507 (Mo. App. W.D. 2013) (holding offer of continued at-will employment did not constitute consideration for the arbitration agreement). Defendants argue, however, that this line of authority can be distinguished from the instant case, because the type of employment in Morrow, and its progeny, involved offers of *continued* at-will employment, while here Cintas's promise to Jimenez relates to *"future" or "new"* at-will employment.[3] This distinction is immaterial.

In Morrow, an employer similarly argued that its "offer" of "continuing employment" supplied the consideration needed for an arbitration provision it sought to enforce against its former employee's claims. 273 S.W.3d at 27. The court of appeals observed that in Missouri, "[e]mployment-at-will is not a legally enforceable employment relationship because it is terminable at the will of either party, on a moment-by-moment basis." Morrow, 273 S.W.3d at 26. The court in Morrow, therefore, reasoned that the, "[t]erms and conditions of at-will employment are not enforceable at law as contractual duties," and an employer's offer of "continued at-will employment" lacks consideration. Id. at 26-27; see also Clemmons, 397 S.W.3d at 508 (finding employee's "at-will employment . . . was not a legally enforceable employment relationship, so any terms and conditions placed on his employment were not enforceable at law as contractual duties.").

Here, regardless of whether we characterize Jimenez's employment as "new," "future" or "continued," her employment with Cintas was at-will. Under Missouri law, as stated in Morrow, terms and conditions of at-will employment are unilaterally imposed on employees, so they "are

---

[3] It is not clear from the record what specific day Jimenez began her employment in December 2011. Defendants contend that Jimenez "was offered employment by Cintas as a Fire Service Technician contingent upon execution of [the Agreement]." Presumably, Defendants are claiming that Jimenez signed the Agreement before she was hired.

7

not enforceable at law as contractual duties," Morrow, 273 S.W.3d at 26, and will not create consideration any more in this case than if Jimenez's employment had been "continued" at-will employment. See also Clemmons, 397 S.W.3d at 508; Whitworth, 344 S.W.3d at 741; Frye, 321 S.W.3d at 438 (finding no consideration where the agreement "does not alter the fundamental component of the at-will employment relationship—the ability to quit or be fired at anytime for any reason.").[4]

Defendants cite McIntosh v. Tenet Health Systems Hospitals, Inc., 48 S.W.3d 85, 89 (Mo. App. E.D. 2001), for the proposition that "an offer of new at-will employment, contingent upon the execution of an arbitration agreement, will serve as sufficient consideration for the agreement to arbitrate." McIntosh does not support this proposition. In McIntosh a former employee brought an action against his employer for wrongful termination and breach of contract. Id. at 88. Nowhere do the facts in McIntosh indicate that an at-will employment relationship existed between the employee and his employer, and nowhere does the court address at-will employment or seek to distinguish between offers of "new" at-will employment and "continued" at-will employment. See id. (stating only that employee's lawsuit was "for wrongful termination and breach of contract.").

Accordingly, we hold that Cintas's offer of at-will employment to Jimenez does not qualify as valid consideration to support the arbitration provision in this case. Point denied.

---

[4] In Whitworth v. McBride & Son Homes, Inc. an employer presented nearly the same argument as Defendants present here, contending that the court should distinguish between a promise of "continued" at-will employment and an "initial" offer of at-will employment. 344 S.W.3d at 741. The court in Whitworth declined to acknowledge any difference "between accepting an at-will employment offer and agreeing to continue an at-will employment relationship," before ultimately finding no material difference actually existed between its facts and those found in Morrow because the facts in both cases involved offers of "continued" employment. Id. (finding "no practical distinction between the facts of this case and Morrow.").

B. **The Parties Are Not Mutually Obligated to Arbitrate All of Their Claims**

Defendants also contend that consideration is provided by the arbitration provision's mutual promises to arbitrate disputes. Jimenez responds, however, that the agreement to arbitrate is not "mutual and reciprocal," and is therefore devoid of consideration, because it exempts Cintas from arbitrating those claims it is most likely to bring against Jimenez, while she remains bound to arbitrate those claims that she is "most likely to bring against [Cintas]."

Where there is no consideration other than the parties' mutual promises, the agreement is commonly referred to as a bilateral contract. Baier v. Darden Restaurants, 420 S.W.3d 733 (Mo. App. W.D. 2014). Valid consideration supporting a bilateral contract, unlike a unilateral contract, rests solely on whether the parties' promises to each other are mutually binding. Frye, 321 S.W.3d at 438 ("if a contract contains mutual promises, such that a legal duty or liability is imposed on each party as a promisor to the other party as a promise, the contract is a bilateral contract supported by sufficient consideration."). Consequently, in Missouri, a bilateral contract also requires "mutuality of obligation," as essential to the formation a valid contract. See Sumners v. Service Vending Co., Inc., 102 S.W.3d 37, 41 (Mo. App. S.D. 2003) ("[A] promise is not good consideration unless there is mutuality of obligation . . . ."); Kunzie, 330 S.W.3d at 483 (citing Baris v. Layton, 43 S.W.3d 390, 396 (Mo. App. E.D. 2001)); Krusen v. Maverick Transp., 208 S.W.3d 339, 342 (Mo. App. S.D. 2006).

Mutuality of obligation "means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." Sumners, at 102 S.W.3d at 41(quoting Aden v. Dalton, 107 S.W.2d 1070, 173 (Mo. 1937)). Accordingly, in a bilateral contract, where no other consideration is found, Missouri courts scrutinize whether the obligations are, in fact, mutual. See, e.g., Greene

v. Alliance Automotive, Inc., 435 S.W.3d 646 (Mo. App. W.D. 2014) (holding arbitration provision lacked mutuality of obligation because it allowed car dealership to exercise its primary remedy of self-help repossession without waiving arbitration of other disputes, thereby allowing it to unilaterally divest itself of the promise to arbitrate); see also Sumners, 102 S.W.3d at 41 (recognizing "a promise *is not good consideration* unless there is mutuality of obligation, so that each party has the right to hold the other to a positive agreement.") (emphasis added).

In a bilateral contract, such as the one here, courts must consider the "lack of mutual promises to submit claims to arbitration . . . in determining whether there is an enforceable agreement." Morrow, 273 S.W.3d at 24. A contract that purports to exchange mutual promises will be construed as lacking legal consideration if one party retains the right to "unilaterally divest itself of an obligation to perform the promise initially made." Frye, 321 S.W.3d at 442.

As with any contract, we will review the terms of an arbitration agreement to "ascertain the intention of the parties and to give effect to that intent." See Kohner Properties, Inc. v. SPCP Group VI, LLC, 408 S.W.3d 336, 342 (Mo. App. E.D. 2013) (quoting Dunn Industrial Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. banc 2003)). Furthermore, we read the terms of the contract together as a whole to determine the intention of the parties, giving each term its plain, ordinary, and usual meaning. Kohner, 408 S.W.3d at 342. In doing so, we attribute "a reasonable meaning to all of the provisions of the agreement" and refrain from leaving "some of the provisions without function or sense." Id. at 342-43. We determine whether an agreement provides mutual obligation by looking to the language of the purported agreement in each case. See, e.g., Morrow, 273 S.W.3d at 25 (noting terms of arbitration agreement at issue did not bind employer to submit its claims to arbitration or "keep any other so-called 'promise' expressed in

10

the [arbitration agreement]."); <u>Frye</u>, 321 S.W.3d at 440-441 (analyzing terms of employee's dispute resolution program and noting no "corollary provisions" applied to employer).

Here, Section 8 of the Agreement requires that Cintas and Jimenez arbitrate any unresolved "claims for damages, as well as reasonable costs and attorney's fees, caused by [the other]'s violation of any provision of this Agreement or any law, regulation or public policy." However, it expressly exempts from arbitration: "workers' compensation claims, unemployment benefits claims, *claims for a declaratory judgment or injunctive relief concerning any provision of Section 4* and claims not lawfully subject to arbitration . . . ." (Emphasis added).

Defendants argue that the above terms in Section 8 plainly require both parties to arbitrate their disputes, with several exceptions, and these terms should be construed as "mutual in all relevant respects." On its face, we agree that the language in Section 8 plainly states that both parties must arbitrate all of their claims except: workers' compensation claims, unemployment benefits claims, claims not lawfully subject to arbitration, and "claims for a declaratory judgment or injunctive relief concerning any provision of Section 4 . . . ."

Jimenez, however, correctly points to additional language in Section 4, providing that only the:

> Employer[,] may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction or other injunctive relief to enforce Employee's compliance with the obligations, acknowledgments and covenants in this Section 4. Employer may also include as part of such injunction action any claims for injunctive relief under any applicable law arising from the same facts or circumstances as any threatened or actual violations of Employee's obligations, acknowledgements and covenants in this Section 4.

The effect of the language in Section 4, Jimenez asserts, is that Cintas alone is exempted from arbitrating alleged violations of the Non-Compete Provisions.

11

Defendants reply that the plain terms of Section 8 do not specify which party may seek judicial relief for alleged violations of the Non-Compete Provisions of Section 4, and so we should construe Section 8 to mean that both parties are exempt from arbitrating alleged violations of the Non-Compete Provisions of Section 4. But this interpretation would render meaningless the express language of Section 4, which provides that Cintas alone may apply "for a temporary restraining order, preliminary injunction or other injunctive relief to enforce [Jimenez]'s compliance with the obligations, acknowledgments and covenants in this Section 4."

We construe a contract as a whole so as not to render any terms meaningless. See Chochorowski v. Home Depot U.S.A., 404 S.W.3d 220, 229 (Mo. banc 2013). Furthermore, when construing the language of a contract, specific terms and provisions are given preference over general terms. See General American Life Ins. Co. v. Barrett, 847 S.W.2d 125, 133 (Mo. App. W.D. 1993). We, therefore, cannot ignore the specific language of Section 4.

We agree with Jimenez that Cintas alone is exempted from arbitrating disputes concerning Section 4's Non-Compete Provisions, while Jimenez is bound to arbitrate those same claims. We also agree that this exception allows Cintas to refrain from arbitrating those claims it is most likely to bring against Jimenez.[5] At the same time, Jimenez is bound to arbitrate all of

---

[5] This Court will take judicial notice of the records of other cases in Missouri when justice requires it. See State v. Pennick, 364 S.W.2d 556, 559 (Mo. 1963); Jones v. Des Moines & Mississippi River Levee Dist. No. 1, 369 S.W.2d 865 (Mo. App. St.L. 1963). Our review of Missouri's published appellate cases over the past six years confirms that in those cases, the majority of lawsuits brought by employers against employees have included actions for injunctive or declaratory relief based on alleged violations of various non-compete provisions that are of a type similar to those Cintas has exempted itself from arbitrating under the terms of Section 4. Compare Sigma-Aldrich Corp. v. Vikin, 2014 WL 5139359 (Mo. App. E.D. Oct. 14, 2014) (seeking injunctive relief for alleged violation of non-compete provisions), and Lapponese v. Carts of Colorado, Inc., 422 S.W.3d 396, 400 (Mo. App. E.D. 2013); Jumbosack Corp. v. Buyck, 407 S.W.3d 51 (Mo. App. E.D. 2013), and Whelan Sec. Co. v. Kennebrew, 379 S.W.3d 835 (Mo. banc 2012), and Paradise v. Midwest Asphalt Coatings, Inc., 316 S.W.3d 327 (Mo. App. W.D. 2010) (requesting injunction under non-compete provisions in counterclaim), and Mihlfeld & Assoc., Inc. v. Bishop & Bishop, L.L.C., 295 S.W.3d 163 (Mo. App. S.D. 2009), and Brown v. Rollet Bros. Trucking Co., 291 S.W.3d 766, 773-774 (Mo. App. E.D. 2009), and Payroll Advance, Inc. v. Yates, 270 S.W.3d 428 (Mo. App. S.D. 2008), with Central Trust & Inv. Co. v. Kennedy, 2013 WL 268687 (Mo. App. S.D. Jan. 24, 2013) (alleging misappropriation of trade secrets since non-compete provisions under employment agreement were void due to sale of company), and Mead v. Moloney Sec. Co., 274 S.W.3d 537 (Mo. App. E.D. 2008) (breach of contract), and Western Blue Print Co.

those claims legally arbitrable.[6] Thus, the Agreement allows Cintas to seek redress through the court system for those claims it is most likely to have against Jimenez, while binding Jimenez to arbitrate all legally arbitrable claims she may have against Cintas.

Equally critical to resolution of this issue is that the plain language of Section 4 allows Cintas to file "any claims for injunctive relief *under any applicable law* arising from the same facts or circumstances as any threatened or actual violation of Employee's obligations . . . in this Section 4." (Emphasis added). This expansive clause arguably renders illusory Cintas's promise to arbitrate, by permitting Cintas to seek redress in the courts based upon its bare allegation that such claims are tied to Section 4's Non-Compete Provisions. Cintas may litigate at its discretion, while Jimenez is bound to arbitrate all of her legally arbitrable claims.

Where the practical effect of an arbitration agreement binds only one of the parties to arbitration, it lacks mutuality of promise, and is devoid of consideration. Baker, 2014 WL 4086378, at *5 (holding contracts to arbitrate that permit unilateral, retroactive amendment are deemed illusory, and do not constitute consideration, because only one party is effectively bound to arbitrate); Frye, 321 S.W.3d at 442-445; see also Morrow, 273 S.W.3d at 20 (Ahuja, J., concurring); Marzette, 371 S.W.3d 49, 53 (Mo. App. E.D. 2012) (finding arbitration agreement

---

v. Roberts, 367 S.W.3d 7 (Mo. banc 2012) (alleging breach of fiduciary duty, tortious interference, and civil conspiracy), and Moore Auto. Grp., Inc. v. Goffstein, 301 S.W.3d 49 (Mo. banc 2010) (civil conspiracy and conversion), and Saturn of Tiffany Springs v. McDaris, 331 S.W.3d 704 (Mo. App. W.D. 2011) (petitioning court to vacate arbitration award). While we are mindful this review cannot account for the universe of actions that were not appealed, we find no reason to assume the trend in circuit court would substantially depart from the trend reflected by cases that were appealed.

[6] Cintas's promise to exempt Jimenez from arbitrating charges of discrimination to the extent they are filed with an administrative agency is not consideration. It is compelled to allow this exemption by the United States Supreme Court in Gilmer v. Interstate/Johnson Lane, 500 U.S. 20, 28 (1991). Neither do we find consideration in the arbitration exemptions for employees who wish to file claims for unemployment benefits or workers' compensation. The legislature has vested exclusive jurisdiction for these types of claims with specialized administrative tribunals, see Wood v. Union Elec. Co., 786 S.W.2d 613, 614 (Mo. App. E.D. 1990), and these types of claims cannot be arbitrated as a matter of law. See Ferguson v. Countrywide Credit Industries, Inc., 298 F.3d 778, 785 n.6 (9th Cir. 2002); see also Doran v. Chand, 284 S.W.3d 659, 665 (Mo. App. W.D. 2009) (finding employer's promise not to discriminate against employees on the basis of race does not constitute consideration because the law obligates employer not to discriminate).

13

that contained no promise to arbitrate employer's claims lacked mutuality and did not constitute sufficient consideration). Here, Section 4 of the Agreement effectively negates Cintas's obligations under Section 8.[7]

Cintas, as the party seeking to compel arbitration, has failed to meet its burden of proving the existence of a validly formed arbitration agreement. See Whitworth, 344 S.W.3d at 737 (burden of proof rests with party seeking to compel arbitration). Because Cintas is not bound to arbitrate its claims against Jimenez, but retains the discretion to seek court action for those claims it wishes, Cintas's promise to arbitrate is devoid of mutuality of obligation. Accordingly, Cintas's professed promise to arbitrate is not valid consideration and does not support a determination that the parties formed a valid agreement under Missouri law. Point denied.

## CONCLUSION

We affirm the trial court's judgment overruling Defendants' motion to compel arbitration.

_____
Lisa S. Van Amburg, Judge


Angela T. Quigless, C.J. concurs and
Kurt S. Odenwald, J. concurs in a separate opinion.

---

[7] Defendants emphasize that only the language in Section 8 should be considered by this Court, and any language in Section 4 that undermines the suggestion that both parties were exempt from arbitrating violations of the Non-Compete Provisions should be disregarded. This argument lends uncertainty as to whether the agreement also lacks mutuality of assent. See Kunzie, 330 S.W.3d at 483 ("A mutual agreement is reached when 'the minds of the contracting parties . . . meet upon and assent to the same thing in the same sense at the same time.'").

14



# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION III</u>

| | | |
|---|---|---|
| KATHRYN JIMENEZ, | ) | No. ED101015 & 101241 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Michael T. Jamison |
| CINTAS CORPORATION, et al., | ) | |
| | ) | |
| Appellants. | ) | Filed: January 13, 2015 |


<u>INTRODUCTION</u>

I concur with the result of the majority opinion for the limited reason that the arbitration provisions of the employment agreement lack the mutuality of obligation to provide the requisite consideration to support a binding agreement. As noted by majority, when construing the terms of the arbitration provisions as a whole, it is clear that while Cintas may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction or other injunctive relief to enforce an employee's contractual obligations, Jimenez is not granted such right under the arbitration provisions. Where the practical effect of an arbitration agreement binds only one of the parties to arbitration, the agreement lacks mutuality of promise, and is

devoid of consideration.  For this reason, and this reason alone, I agree with affirming the trial court's judgment denying Cintas' motion to compel arbitration.

However, unlike the majority, I am unwilling to extend Missouri authority holding that an offer of *continued* at-will employment lacks consideration to support an arbitration agreement to the facts of this case, which involves the *initial promise* of at-will employment.  See Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15 (Mo. App. W.D. 2008), (a promise of "continued" at-will employment will not constitute consideration for purposes of enforcing an arbitration agreement.)  See also Clemmons v. Kansas City Chiefs Football Club, Inc., 397 S.W.3d 503, 507 (Mo. App. W.D. 2013).  Notably, no Missouri case has held that an initial offer of at-will employment is illusory or lacks the requisite mutuality of promise to provide consideration for the agreement.  Unlike the majority, I consider the distinction between "continued" employment and "initial" employment to be a material difference.

Jimenez began working for Cintas in December 2011 and was terminated in June 2012.  Cintas was under no obligation to hire Jimenez.  As noted by the majority, consideration is created by "either a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party."  Morrow, 273 S.W.3d at 25.  When Cintas hired Jimenez, it affirmatively did something it was not legally obligated to do.  This circumstance is substantively different than merely allowing an employee to continue what the employee has already been doing for the employer.  Bringing on a new hire necessarily involves an undertaking of additional effort and obligation that is absent in allowing "continued" employment.

The majority's reference to Whitworth *v.* McBride & Son Homes, Inc., 344 S.W.3d 730 (Mo. Ct. App. 2011) is unconvincing.  The Western District in Whitworth did not engage in any

2

substantive discussion as to the legal distinction between an initial promise of at-will employment and the continuance of at-will employment relationship for purposes of providing consideration for an enforceable arbitration contract. In fact, <u>Whitworth</u> acknowledges the existence of this potential issue in only one sentence. <u>Whitworth</u> provides no authority for holding that a promise of at-will employment necessarily lacks the consideration required to support the arbitration provisions of an employment agreement. Nor does any Missouri judicial authority. For this reason, I limit my concurrence to the majority's holding that consideration fails because Cintas is not mutually obligated to use the arbitration process required of Jimenez.

_____
Kurt S. Odenwald, Judge