In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

EM MEDICAL, LLC, ) No. ED108965
 )
 Respondent, ) Appeal from the Circuit Court
 ) of St. Louis County
 vs. ) 19SL-CC00974
 )
STIMWAVE LLC, )
 )
 Appellant, )
 ) Honorable Stanley J. Wallach
and )
 )
ANDREA BERRY, et al., )
 )
 Defendants. ) Filed: June 15, 2021

 Stimwave LLC (“Stimwave”) appeals the trial court’s denial of its motion to compel

arbitration of claims between EM Medical, LLC (“EM Medical”) and Stimwave in the

underlying suit in this case. 1 We affirm.

1
 As explained below, the claims between EM Medical and Stimwave in the underlying suit in this case consist of,
(1) EM Medical’s claim alleging Stimwave owed EM Medical money and damages for unpaid commissions earned
by EM Medical before the parties’ business relationship was terminated (Count I of EM Medical’s final amended
petition); (2) EM Medical’s claims relating to Stimwave’s alleged tortious interference with alleged employment
agreements entered into between EM Medical and underlying defendants Andrea Berry, Kaitlin Brenzel, and Ingrid
Flaspohler (Counts V, VI, and VII of EM Medical’s final amended petition); (3) EM Medical’s claim relating to
Stimwave’s termination of the parties’ alleged franchise relationship (Count VIII of EM Medical’s final amended
petition); and (4) Stimwave’s counterclaim relating to EM Medical’s alleged failure to promptly return
approximately $148,130 of Stimwave’s medical equipment inventory after the parties’ business relationship had
ceased. EM Medical also filed breach of contract claims against underlying defendants Andrea Berry, Kaitlin
Brenzel, and Ingrid Flaspohler. The trial court’s decision denying Stimwave’s motion to compel arbitration certified
the decision for appeal as to all claims between EM Medical and Stimwave in the underlying suit pursuant to
Missouri Supreme Court Rule 74.01(b) (2020), and found there was no just reason for delay of an appeal.
 I. BACKGROUND
 This case arises out of a business relationship between EM Medical, a company with its

principal place of business in St. Louis, County, Missouri, and Stimwave, a company with its

principal place of business in Florida. During the course of the parties’ business relationship,

EM Medical solicited orders for Stimwave’s medical products, and Stimwave made payments to

EM Medical. The parties’ business relationship began in January 2016 and ended in June 2018.

 It is undisputed EM Medical and Stimwave’s business relationship was based on an

agreement; however, the parties dispute the type of agreement they had. Specifically, EM

Medical alleges in its final amended petition 2 that the parties’ business relationship was based on

a verbal agreement. In contrast, Stimwave contends in its motion to compel arbitration that the

parties’ relationship was based on a written agreement which Stimwave presented to EM

Medical in January 2016 (“Proposed January 2016 Agreement” or “Proposed Agreement”). The

Proposed January 2016 Agreement is attached as an exhibit to Stimwave’s motion to compel

arbitration.

A. The Proposed January 2016 Agreement

 The Proposed January 2016 Agreement, with exhibits, is seventeen pages long and

contains more than fifty paragraphs and subparagraphs of contractual provisions. Paragraph 4

and Exhibit C of the Proposed January 2016 Agreement collectively provide Stimwave would

pay EM Medical commissions for purchase orders solicited by EM Medical under certain

circumstances, with a commission rate of 25% or 20% depending on the particular calendar year.

Another one of the provisions of the Proposed Agreement, subparagraph 17.4, provides in

2
 The title of EM Medical’s final amended petition alleges it is a “second amended petition”; however, this Court’s
review of the legal file demonstrates the pleading is EM Medical’s third amended petition. To avoid confusion, we
will simply refer to this pleading as the “final amended petition.”

 2
relevant part that any dispute, controversy or claim between the parties which cannot be resolved

through direct negotiations “shall be settled by binding arbitration.”

 Additionally, the first paragraph of the Proposed January 2016 Agreement states in

relevant part: “[This agreement] is effective as of the date signed below . . . by and between

Stimwave . . . and [EM Medical] for the purpose of defining the rights and duties of the parties in

connection with the representation by [EM Medical] of certain [Stimwave] products.” There are

four areas on the Proposed January 2016 Agreement where there is a place for both Stimwave

and EM Medical to sign: (1) on page eleven after subparagraph 17.9 and before any of the

exhibits to the Proposed Agreement; (2) on page fourteen at the bottom of Exhibit B (which is

titled “Territory and Exclusivity”); (3) on page fifteen at the bottom of Exhibit C (which is titled

“Schedule of Commission”); and (4) on page seventeen at the bottom of Exhibit E (which is

titled “Quota”) (collectively “four signature areas on the Proposed Agreement”). Moreover,

before each of the four signature areas on the Proposed Agreement, there are the words,

“AGREED TO AND ACCEPTED BY:” in bold letters.

 Stimwave never signed any of the four signature areas on the Proposed Agreement. EM

Medical signed all of the four signature areas on the Proposed Agreement and dated its signature

on page eleven (with a date of January 19, 2016). However, EM Medical did not deliver a

signed copy of the Proposed Agreement to Stimwave at any time during the course of the parties’

business relationship. Furthermore, Stimwave admits in its motion to compel arbitration that

“Stimwave believed, until February of 2020 [during discovery in the instant case], that EM

Medical had not executed [the Proposed January 2016 Agreement].”

 3
B. Evidence of Further Negotiations and Business Between the Parties

 Approximately one year after the parties’ business relationship began, EM Medical

drafted a new version of the Proposed Agreement which was dated December 4, 2016 (“EM

Medical’s December 2016 Proposal” or “EM Medical’s Proposal”). EM Medical’s December

2016 Proposal was signed by EM Medical on January 1, 2017 and was delivered to Stimwave

sometime in early 2017. Stimwave did not sign EM Medical’s Proposal but instead made

changes to it and returned a revised document to EM Medical. The parties did not subsequently

reach a written agreement executed by both parties but continued in business together until the

termination of the parties’ business relationship.

C. The Termination of the Parties’ Business Relationship and Initial Relevant
 Procedural Posture

 The parties’ business relationship ended on June 25, 2018, when Stimwave wrote a letter

to EM Medical terminating their relationship. Stimwave’s June 25, 2018 letter requested EM

Medical to “cease activities in the representation of Stimwave products” and also stated, “[a]s a

point of reference, [Stimwave] is not in possession of an executed agreement.”

 EM Medical filed its initial petition against Stimwave and underlying defendants Andrea

Berry, Kaitlin Brenzel, and Ingrid Flaspohler (collectively “Defendants”) on March 6, 2019.

Subsequently, EM Medical filed its first amended petition against Defendants on July 22, 2019.

 EM Medical then filed a motion for partial summary judgment on its July 2019 first

amended petition, along with a statement of undisputed facts and accompanying sworn affidavit

of Michael Reid. According to Reid’s affidavit, he was a member and manager of EM Medical

who worked extensively with Stimwave and its customers, and the parties’ relationship began in

January 2016 and ended in June 2018. Reid’s affidavit also alleged:

 4
 Under the parties’ agreement, EM Medical solicited orders for Stimwave’s
 products from medical providers, and provided training and support to physicians
 as to the use of the products, including the provision of a clinical specialist to
 assist physicians with cases and patients. For its part, Stimwave agreed to pay
 EM Medical a 25% commission for orders placed by medical providers it
 solicited.

The trial court subsequently denied EM Medical’s motion for partial summary judgment.

 EM Medical filed a second amended petition against Defendants on October 21, 2019,

and a final amended petition against Defendants on October 30, 2019. EM Medical’s final

amended petition raises eight counts against Defendants consisting of, (1) EM Medical’s claim

alleging Stimwave owed EM Medical money and damages for unpaid commissions earned by

EM Medical before the parties’ business relationship was terminated (Count I) 3; (2) EM

Medical’s breach of contract claims against underlying defendants Andrea Berry, Kaitlin

Brenzel, and Ingrid Flaspohler (Counts II, III, and IV); (3) EM Medical’s claims relating to

Stimwave’s alleged tortious interference with alleged employment agreements entered into

between EM Medical and underlying defendants Andrea Berry, Kaitlin Brenzel, and Ingrid

Flaspohler (Counts V, VI, and VII); and (4) EM Medical’s claim relating to Stimwave’s

termination of the parties’ alleged franchise relationship (Count VIII).

 On November 25, 2019, Stimwave filed a responsive pleading. In this pleading, inter

alia, Stimwave admitted it had an agreement with EM Medical; Stimwave denied it was

obligated to pay commissions to EM Medical; and Stimwave raised a counterclaim against EM

3
 Count I of EM Medical’s final amended petition alleges in relevant part that in or around January 2016, EM
Medical and Stimwave “entered into a verbal agreement”; “[u]nder the parties’ verbal agreement, EM Medical
solicited orders for Stimwave’s products from medical providers . . .” and “Stimwave agreed to pay EM Medical a
commission for the orders placed by medical providers it solicited”; “[i]n performing the parties’ agreement,
Stimwave representatives met with EM Medical representatives in Missouri, made countless calls to EM Medical
representatives in Missouri, [ ] sent countless emails to EM Medical representatives in Missouri[,] . . . [ ] sold and
delivered products to medical providers in Missouri, and sent commission checks to EM Medical in Missouri”; and
“Stimwave did not pay [ ] unpaid commissions to EM Medical within 30 days of being terminated [on June 25,
2018] (or thereafter) as required by [ ] [section] 407.912 [RSMo 2016].”

 5
Medical alleging EM Medical failed to promptly return approximately $148,130 of Stimwave’s

medical equipment inventory after the parties’ business relationship had ceased.

D. Stimwave’s Motion to Compel Arbitration and Other Procedural Posture
 Immediately Preceding the Instant Appeal

 On March 6, 2020, Stimwave filed a motion to compel arbitration of the claims between

EM Medical and Stimwave in the underlying suit in this case based upon the arbitration

provision in the Proposed January 2016 Agreement. As previously stated, Stimwave admits in

its motion to compel arbitration that “Stimwave believed, until February of 2020 [during

discovery in the instant case], that EM Medical had not executed [the Proposed January 2016

Agreement].” Six documents are attached in support of Stimwave’s motion: Exhibits A, B, C,

D, E, and F.

 Exhibit A to the motion to compel is Stimwave’s June 25, 2018 letter to EM Medical

terminating their relationship discussed above in Section I.C. of this opinion. Exhibit B is a

September 14, 2018 letter from Stimwave’s attorney to EM Medical’s attorney stating in relevant

part:

 . . . [I]f you are in possession of a fully executed agreement between Stimwave
 and EM Medical, please kindly forward it to us for review. It is our further
 understanding that no agreement exists between Stimwave and EM Medical;
 therefore, neither ‘commissions’ are owed by Stimwave to EM Medical nor has
 Stimwave provided a notice of termination that would subject it to additional
 financial obligations to EM Medical.

Exhibit C is a copy of the Proposed January 2016 Agreement discussed above in Section I.A. of

this opinion. And Exhibits D, E, and F, respectively, are EM Medical’s answers to Stimwave’s

interrogatories; EM Medical’s responses to Stimwave’s document requests; and a certificate of

service regarding discovery.

 6
 On March 9, 2020, EM Medical filed its motion in opposition to Stimwave’s motion to

compel arbitration. EM Medical’s motion in opposition alleges there is no valid written

agreement between the parties providing for arbitration; the parties did not agree to arbitrate

disputes; and the parties entered into negotiations after Stimwave presented EM Medical with the

Proposed January 2016 Agreement. Two documents, Exhibits 1 and 2, are attached in support of

EM Medical’s motion.

 Exhibit 1 to EM Medical’s motion in opposition is a copy of EM Medical’s December

2016 Proposal discussed in Section I.B. of this opinion. And Exhibit 2 is a copy of two April

2017 emails between Stimwave and EM Medical showing EM Medical asked Stimwave to sign

EM Medical’s December 2016 Proposal; and Stimwave responded stating Stimwave made two

changes to EM Medical’s December 2016 Proposal.

 On March 31, 2020, the trial court held a telephone hearing on Stimwave’s motion to

compel arbitration at which the parties appeared by counsel. Although no live testimony was

adduced at the hearing, counsel for both parties presented oral argument, and the court took

judicial notice of the pleadings and attached documentary evidence discussed above.

 Subsequently, on May 7, 2020, the trial court entered its decision denying Stimwave’s

motion to compel arbitration. The trial court’s decision essentially concluded no valid agreement

to arbitrate existed between Stimwave and EM Medical because, inter alia, the evidence did not

show the parties were bound by the terms and arbitration provision in the Proposed January 2016

Agreement. The trial court’s decision also certified the decision for appeal as to all claims

between EM Medical and Stimwave in the underlying suit pursuant to Missouri Supreme Court

Rule 74.01(b) (2020), and found there was no just reason for delay of an appeal. Stimwave now

appeals.

 7
 II. DISCUSSION

 In Stimwave’s first point on appeal, Stimwave contends the trial court erred in denying

its motion to compel arbitration because a valid agreement to arbitrate existed between Stimwave

and EM Medical under Missouri law. For the reasons discussed below, we disagree. 4

A. Standards of Review for a Motion to Compel Arbitration and General Law
 Regarding Evidentiary Hearings on Such a Motion

 Generally, whether a party’s motion to compel arbitration should have been granted is a

question of law that our Court reviews de novo. See Katz v. Anheuser-Busch, Inc., 347 S.W.3d

533, 539, 543 (Mo. App. E.D. 2011); Kunzie v. Jack-In-The-Box, Inc., 330 S.W.3d 476, 480

(Mo. App. E.D. 2010). However, when there is a factual dispute regarding the existence of an

arbitration agreement and the trial court holds an evidentiary hearing to determine whether such

an agreement exists, appellate review of “the [trial] court’s determination as to the existence of

an agreement itself is analogous to that in a court-tried case.” Theroff v. Dollar Tree Stores, Inc.,

591 S.W.3d 432, 435-36, 439 (Mo. banc 2020) (quoting Kunzie, 330 S.W.3d at 480); see Katz,

347 S.W.3d at 543-46 (similarly holding). 5 Accordingly, the trial court’s decision will be

affirmed unless there is no substantial evidence to support it, it is against the weight of the

evidence, it erroneously declares the law, or it erroneously applies the law. Theroff, 591 S.W.3d

at 436; Katz, 347 S.W.3d at 543-46. Moreover, “[our Court] will affirm the trial court’s

4
 Stimwave raises a total of two points on appeal. Stimwave’s second point on appeal essentially asserts the trial
court erred in denying its motion to compel arbitration because a valid agreement to arbitrate existed under the
Federal Arbitration Act. “Although the Federal Arbitration Act is to be applied when enforcing a contract that
invokes its provisions, ‘Missouri contract law applies to determine whether the parties have entered a valid
agreement to arbitrate.’” Jimenez v. Cintas Corporation, 475 S.W.3d 679, 683 (Mo. App. E.D. 2015) (quoting State
ex rel. Vincent v. Schneider, 194 S.W.3d 853, 856 (Mo. banc 2006)). Accordingly, we find our discussion of
Stimwave’s first point on appeal involving whether a valid agreement to arbitrate existed between Stimwave and
EM Medical and under Missouri law is dispositive, and Stimwave’s second point on appeal is denied. See id.
5
 See also Jimenez, 475 S.W.3d at 683 (“when faced with a motion to compel arbitration, [a court] must [generally]
consider three factors: first, whether a valid arbitration agreement exists; second, whether the specific dispute falls
within the scope of the agreement; and third, whether the agreement is subject to revocation under applicable
principles of contract law”).

 8
[decision] if it is cognizable under any theory, regardless of whether the reasons advanced by the

trial court are wrong or insufficient.” Jackson v. Higher Education Loan Authority of Missouri,

497 S.W.3d 283, 287 (Mo. App. E.D. 2016) (citing Motormax Financial Services Corporation v.

Knight, 474 S.W.3d 164, 168 (Mo. App. E.D. 2015) (abrogated on other grounds)).

 As held by the Missouri Supreme Court, “[w]hen there are factual disputes regarding the

existence of an arbitration agreement, the [trial] court shall conduct an evidentiary hearing to

determine whether an arbitration agreement exists.” Theroff, 591 S.W.3d at 436. Even in the

absence of live testimony, the requirements of an evidentiary hearing are met if, (1) the trial

court is provided with adequate materials and evidence with which to resolve any factual

disputes; and (2) there is no allegation the parties were limited in its submission of the evidence

by the trial court or that the trial court failed to consider any evidence presented by the parties.

See Katz, 347 S.W.3d at 546 (concluding “[t]he proceedings conducted by the trial court,

including extensive briefing, submission of sworn affidavits, and oral argument, fully satisf[ied]

the requirements of an evidentiary hearing” where “[the appellant] [did] not allege it was limited

in its submission of evidence by the trial court or that the trial court failed to consider any

evidence that [the appellant] presented”); Kunzie, 330 S.W.3d at 481, 481 n.7 (indicating an

evidentiary hearing took place in Nitro Distributing, Inc. v. Dunn, 194 S.W.3d 339, 352 (Mo.

banc 2006) despite no live witnesses “[where] the [trial] court was provided with . . . documents,

affidavits, deposition transcripts and other materials with which to resolve the factual disputes”)

(quoting Nitro Distributing, Inc., 194 S.W.3d at 352) (bracketed alterations in Kunzie).

B. General Law Regarding the Determination of Whether a Valid Agreement to
 Arbitrate Exists in a Particular Case

 “The party seeking to compel arbitration has the burden of proving the existence of

a valid and enforceable arbitration agreement.” Millennium Anesthesiology Consultants, LLC v.

 9
Walsh, 562 S.W.3d 373, 377 (Mo. App. E.D. 2018). Because arbitration is a matter of contract,

parties will be compelled to arbitrate their claims only if an alleged arbitration agreement

satisfies the essential elements of a valid contract. Jimenez v. Cintas Corporation, 475 S.W.3d

679, 683 (Mo. App. E.D. 2015). To resolve disputes between parties concerning the validity of a

contract, a court applies the typical rules of state contract law and canons of contract

interpretation. Id. “Although the Federal Arbitration Act is to be applied when enforcing a

contract that invokes its provisions, ‘Missouri contract law applies to determine whether the

parties have entered a valid agreement to arbitrate.’” Id. (quoting State ex rel. Vincent v.

Schneider, 194 S.W.3d 853, 856 (Mo. banc 2006)).

 “The elements required to form a valid contract in Missouri are offer, acceptance, and

bargained for consideration.” Miller v. Securitas Security Services USA Inc., 581 S.W.3d 723,

729 (Mo. App. W.D. 2019) (quotation omitted); see Kunzie, 330 S.W.3d at 481 (similarly

holding). The elements of offer and acceptance require there to be a mutual agreement, i.e., a

meeting of the minds, between the contracting parties, which means the parties meet upon and

assent to the same thing, in the same sense, and at the same time. Miller, 581 S.W.3d at 729;

Kunzie, 330 S.W.3d at 483-84. “A meeting of the minds occurs when there is a definite offer

and unequivocal acceptance.” Miller, 581 S.W.3d at 729 (emphasis added and quotation

omitted); Kunzie, 330 S.W.3d at 484 (emphasis in original and quotation omitted). Whether

there was a meeting of the minds between the contracting parties is a question of fact for the trial

court to determine. Miller, 581 S.W.3d at 729 (citing Jackson, 497 S.W.3d at 289).

 “Acceptance of an offer is a manifestation of assent to the terms thereof made by the

offeree in a manner invited or required by the offer.” Miller, 581 S.W.3d at 730 (quoting

Jackson, 497 S.W.3d at 289). “The critical question when measuring if a party’s words or

 10
conduct constitute acceptance is whether the signals sent by the offeree to the offeror objectively

manifest the offeree’s intent to be presently bound.” Miller, 581 S.W.3d at 730 (quoting Kunzie,

330 S.W.3d at 484). Whether there exists mutual assent sufficient to form a valid contract is

dependent upon the objective intentions of the contracting parties, which are determined by

reviewing the parties’ words and conduct. Miller, 581 S.W.3d at 730 (citing Jackson, 497

S.W.3d at 289).

 With respect to contracts, signatures are a common method of showing agreement.

Miller, 581 S.W.3d at 732. Other factors to consider in determining whether the parties had an

agreement include, (1) whether the party presented with a proposed agreement signed and

delivered it to the other party; and (2) whether there is evidence the parties mutually intended the

document to not take effect as a contract until signed by all of the parties named therein. See

State ex rel. Career Aviation Sales, Inc. v. Cohen, 952 S.W.2d 324, 326 (Mo. App. E.D. 1997)

(holding “[one party] accepted the offer by signing the contract . . . and returning it to [the other

party]”) (emphasis added); State, to Use of Goodman, v. Regent Laundry Co., 190 S.W. 951, 953

(Mo. App. 1916) (“a party who signs and delivers an instrument is bound by the obligations he

therein assumes although it is not signed by all the parties named in it unless it appears that the

parties signing mutually intended that it should be inchoate and incomplete and not take effect as

a contract until signed by all the parties named”) (emphasis added and quotation omitted).

C. Our Standard of Review of the Trial Court’s Decision in this Case

 In this case, there was a factual dispute regarding whether Stimwave and EM Medical

mutually agreed, i.e., had a meeting of the minds, to be bound by the terms of the Proposed

January 2016 Agreement, including the arbitration provision therein. See Miller, 581 S.W.3d at

729 (equating the terms mutual agreement and meeting of the minds and also holding whether

 11
there was a meeting of the minds between contracting parties is a question of fact for the trial

court to decide) (citing Jackson, 497 S.W.3d at 289); see also Kunzie, 330 S.W.3d at 483-84

(equating the terms mutual agreement and meeting of the minds). In other words, there was a

factual dispute regarding whether a valid agreement to arbitrate existed between the parties. See

Theroff, 591 S.W.3d at 438 (“[t]he existence of a contract necessarily implies there has been a

‘meeting of the minds’ between the parties”) (quotation omitted); Miller, 581 S.W.3d at 729 and

Kunzie, 330 S.W.3d at 483-84 (both holding a meeting of the minds between the parties is

required to form a valid contract in Missouri).

 Additionally, the trial court’s telephone hearing on Stimwave’s motion to compel

arbitration met the requirements of an evidentiary hearing because, (1) the trial court was

provided with adequate materials and evidence (consisting of oral argument, pleadings, at least

one sworn affidavit, and other documents), with which to resolve the factual dispute as to

whether there was a meeting of the minds between Stimwave and EM Medical; and (2)

Stimwave does not allege it was limited in its submission of the evidence by the trial court or that

the trial court failed to consider any evidence presented by Stimwave. See Katz, 347 S.W.3d at

546; Kunzie, 330 S.W.3d at 481, 481 n.7; see also Nitro Distributing, Inc., 194 S.W.3d at 352.

 Because there was a factual dispute regarding whether a valid agreement to arbitrate

existed between Stimwave and EM Medical and because the trial court held an evidentiary

hearing, we will affirm the trial court’s decision concluding no valid agreement to arbitrate

existed between the parties unless there is no substantial evidence to support it, it is against the

weight of the evidence, it erroneously declares the law, or it erroneously applies the law. See

Theroff, 591 S.W.3d at 435-36, 439; Katz, 347 S.W.3d at 543-46. Additionally, “[our Court] will

affirm the trial court’s [decision] if it is cognizable under any theory, regardless of whether the

 12
reasons advanced by the trial court are wrong or insufficient.” Jackson, 497 S.W.3d at 287

(citing Motormax, 474 S.W.3d at 168 (abrogated on other grounds)).

D. Analysis of the Trial Court’s Decision in this Case

 In this case, the trial court’s decision denying Stimwave’s motion to compel arbitration

essentially concluded no valid agreement to arbitrate existed between Stimwave and EM Medical

because, inter alia, the evidence did not show the parties were bound by the Proposed January

2016 Agreement. We presume the trial court weighed the evidence and found Stimwave and EM

Medical did not mutually agree to the terms and arbitration provision in the Proposed January

2016 Agreement, a factual finding that is supported by substantial evidence in the record and is

not against the weight of the evidence. See Baier v. Darden Restaurants, 420 S.W.3d 733, 739

(Mo. App. W.D. 2014) (similarly finding); see also Miller, 581 S.W.3d at 729-30 (holding

parties are only bound to an alleged agreement when there has been mutual assent).

 We acknowledge that when viewed in isolation, arguably some evidence presented to the

trial court – the fact Stimwave presented the Proposed January 2016 Agreement to EM Medical

in January 2016 and EM Medical signed all four signature areas of the Proposed Agreement –

indicates the parties may have mutually agreed to be bound to the terms and arbitration provision

in the Proposed January 2016 Agreement. See Miller, 581 S.W.3d at 732 (providing

signatures are a common method of showing agreement). However, as discussed below, the

majority of the evidence presented to the trial court supports a finding that the parties did not

mutually agree to be bound to the terms and arbitration provision in the Proposed January 2016

Agreement.

 First, EM Medical did not deliver the Proposed January 2016 Agreement containing EM

Medical’s signatures to Stimwave at any time during the course of the parties’ business

 13
relationship; in fact, Stimwave was not aware EM Medical signed the Proposed Agreement until

February 2020. Cf. Cohen, 952 S.W.2d at 326 (holding “[one party] accepted the offer

by signing the contract . . . and returning it to [the other party]”) (emphasis added); Regent

Laundry Co., 190 S.W. at 953 (providing the general rule is that “a party who signs and delivers

an instrument is bound by the obligations . . . therein . . . although it is not signed by all the

parties named in it”) (emphasis added and quotation omitted).

 Additionally, Stimwave never signed any of the four signature areas on the Proposed

Agreement containing places for Stimwave to sign even though, (1) the Proposed Agreement

contained terms stating it was not effective until signed by both Stimwave and EM Medical; 6 and

(2) before each of the four signature areas on the Proposed Agreement, there are the words,

“AGREED TO AND ACCEPTED BY:” in bold letters. See Miller, 581 S.W.3d at 732

(providing signatures are a common method of showing agreement); Regent Laundry Co., 190

S.W. at 953 (providing an exception to the general rule that “a party who signs and delivers an

instrument is bound by the obligations . . . therein . . . although it is not signed by all the parties”

is where “it appears that the parties signing mutually intended that it should be inchoate and

6
 As previously stated, the first paragraph of the Proposed January 2016 Agreement states in relevant part that:
“[This agreement] is effective as of the date signed below . . . by and between Stimwave . . . and [EM Medical] for
the purpose of defining the rights and duties of the parties in connection with the representation by [EM Medical] of
certain [Stimwave] products.” On appeal, Stimwave argues we should not consider the aforementioned provision in
determining whether a valid agreement to arbitrate existed between the parties in this case because EM Medical, the
respondent in this appeal, did not raise any claim concerning the provision to the trial court in the proceedings
below. We find Stimwave’s argument lacks merit pursuant to the following reasoning in Dotson v. Dillard’s, Inc.,
472 S.W.3d 599, 603 n.2 (Mo. App. W.D. 2015):
 Generally, [an appellate court] do[es] not review claims raised for the first time on appeal because
 we will not convict a trial court of error for an issue not presented for its determination. But we
 will affirm a trial court’s [decision], so long as it reached the correct result, even if we disagree
 with its reasoning. These principles generally mean that an appellant is foreclosed from raising
 new arguments, while a respondent is not so limited.
(internal quotations and citations omitted); see also Jackson, 497 S.W.3d at 287 (“[our Court] will affirm the trial
court’s [decision] if it is cognizable under any theory, regardless of whether the reasons advanced by the trial court
are wrong or insufficient”) (citing Motormax, 474 S.W.3d at 168 (abrogated on other grounds)); Sheedy v. Missouri
Highways and Transp. Com’n, 180 S.W.3d 66, 71 (Mo. App. S.D. 2005) (“[u]nlike an appellant, a respondent in a
court-tried case is permitted to raise a new theory on appeal, but only for the purpose of sustaining a favorable
[decision]”).

 14
incomplete and not take effect as a contract until signed by all the parties named”) (quotation

omitted); see also Abdiana Properties, Inc. v. Bengtson, 575 S.W.3d 754, 760-61 (Mo. App.

W.D. 2019) and Baier, 420 S.W.3d at 738-39 (both holding a trial court could have reasonably

concluded the defendant’s signature on an alleged agreement containing an arbitration provision

was intended as a condition of its mutual assent and the defendant did not mutually assent where,

like in this case, the defendant presented the alleged agreement to the plaintiff, the alleged

agreement included a place for the defendant to sign, and the defendant did not sign).

 Under these circumstances, the trial court could have reasonably concluded from the

evidence that the parties did not mutually agree to be bound by the terms and arbitration

provision in the Proposed January 2016 Agreement. See id.; cf. Cohen, 952 S.W.2d at 326;

Regent Laundry Co., 190 S.W. at 953; see also Miller, 581 S.W.3d at 729 and Kunzie, 330

S.W.3d at 484 (both holding “[a] meeting of the minds occurs when there is a definite offer and

unequivocal acceptance) (emphasis added and quotation omitted in Miller) (emphasis in original

and quotation omitted in Kunzie). Accordingly, Stimwave, as the party seeking to compel

arbitration, has failed to meet its burden of proving the existence of a valid arbitration agreement

under Missouri law. 7 See Miller, 581 S.W.3d at 729; Jimenez, 475 S.W.3d at 689; Kunzie, 330

S.W.3d at 483-84; see also Millennium Anesthesiology Consultants, LLC, 562 S.W.3d at 377.

7
 We note Stimwave argues there was a valid arbitration agreement under Missouri law because EM Medical
accepted the terms of the Proposed January 2016 Agreement, including its arbitration provision, through its
performance of services and receipt of payment described in the Proposed Agreement. We find this argument lacks
merit because, (1) it is not clear from the evidence presented to the trial court that EM Medical performed services
and received payment pursuant to the terms of the Proposed January 2016 Agreement rather than the terms of a
verbal agreement as alleged by EM Medical; (2) regardless of any alleged performance by EM Medical, the trial
court could have reasonably concluded from the evidence before the court that the parties did not mutually agree to
be bound by the terms and arbitration provision in the Proposed January 2016 Agreement for the reasons discussed
above in Section II.D. of this opinion; and (3) Stimwave has failed to cite any controlling legal authority involving a
trial court’s decision on a motion to compel arbitration to support its argument, and we can find no such legal
authority.

 15
Therefore, the trial court’s decision denying Stimwave’s motion to compel arbitration is not

erroneous. See Jimenez, 475 S.W.3d at 689. Stimwave’s first point on appeal is denied.

 III. CONCLUSION

 Based on the foregoing, the trial court’s decision denying Stimwave’s motion to compel

arbitration is affirmed.

 ROBERT M. CLAYTON III, Judge

Colleen Dolan, P.J., and
Mary K. Hoff, J., concur.

 16